CHARLES E. HOVEY et al., Appellants v. JOHN ELLIOTT et al, Respondents.

One McD. contracted to pay plaintiffs for their services in prosecuting a certain claim, twenty-five per cent of the award obtained, the payment of which was by the contract declared to be a lien upon the claim and upon any draft, money or evidence of indebtedness which might be paid or issued thereon. An award was made in favor of McD; who assigned it to W. Plaintiff thereupon commenced a suit to restrain McD. and W. from disposing of, collecting or receiving more than three-fourths of the award and for a decree establishing plaintiff's lien. An order was made appointing R. receiver with directions to collect the award and to invest a portion in certain bonds to be held to await the result of the action. A demurrer to plaintiff's bill was sustained and the bonds so held were ordered to be handed over by R. to McD. and W. who transferred them to R. & Co., of which firm R. was a member. R. & Co. surrendered the bonds for new ones which they sold in the market. Meanwhile, the decree dismissing the bill was reversed on appeal and the case remanded to the Special Term with leave to the defendants to answer which they

did.   Having failed to pay into court in accordance with its direction, to
the credit of the suit, the amount of the award claimed by the plaintiffs,
defendants' answer was stricken out and a decree taken *pro confesso*
against them, adjudging that they should pay to plaintiffs the amount
claimed and that the latter have a lien therefor as provided by the
contract.   Plaintiffs thereupon, more than six years after the reversal of
the decree dismissing the complaint, but within six years after the final
decree, commenced this action to recover said amount against the surviv-
ing partners of R. & Co.   The court below held that plaintiffs had a
remedy by action at law against the defendants arising on the sale of the
bonds as against which the statute of limitations began to run at a
time not later than that of the reversal of the decree dismissing the
plaintiff's case and that their right of action was barred.   *Held,*
(FOLLETT, Ch. J., HAIGHT and BROWN, JJ., dissenting), error; that
defendants' firm having purchased the bonds *pendente lite,* charged
with knowledge of plaintiff's claim, they were bound by the result
as effectually as if they had been made parties thereto, and for the pur-
poses of the lien might be deemed to have held the bonds, and upon
sale thereof, to hold the proceeds in trust for plaintiffs; that when the
decree was obtained they were bound to pay plaintiffs from the proceeds
of sale an amount sufficient to satisfy their lien, and concurrently in
time with the arising of such duty the right to demand its performance
accrued; that prior to said decree plaintiff's lien was simply equitable to
be enforced only by suit in equity; that, therefore, during the pendency
of the former action, the statute of limitations did not run.

*Hale* v. *O. N. Bk.* (64 N. Y. 550); *Husted* v. *Ingraham* (75 id. 251.) *Pierson*
v. *McCurdy* (100 N. Y. 608), distinguished.

*Hovey* v. *Elliott* (21 J. & S. 331), reversed.


(Argued June 21, 1889; decided January 14, 1890.)


APPEAL from judgment of the General Term of the Superior
Court of the city of New York, entered upon an order made
May 12, 1886, which affirmed a judgment in favor of defend-
ants, entered upon the report of a referee.

This action was commenced April 16, 1884; the relief
asked being that defendants should be declared trustees of cer-
tain bonds for the benefit of plaintiffs, and the latter should be
held to have a lien upon and a right to such bonds, and that
defendents should account for the same.   The answer set up
the statute of limitations as a defense.   The trial court sus-
tained this defense and dismissed the complaint.

Further facts appear in the opinions.

*Thomas M. Wheeler and Herbert B. Titus,* for appellants. The lien of the plaintiff's "upon the claim of McDonald, and upon any draft, money, evidence of indebtedness or the proceeds thereof," was not destroyed. (*Tilton* v. *Cofield,* 93 U. S. 168; *Leitch* v. *Wells,* 48 N. Y. 601; *Comstock* v. *Hier,* 73 id. 278; *Farwell* v. *I. Nat. Bank,* 90 id. 489; *Ellett* v. *Tyler,* 41 Ill. 449.) There is no such action as an action for damages for the destruction of an equitable lien. (*Anthony* v. *Slaid,* 11 Metc. 291; 1 Chitty on Pleading, 3; *Forbes* v. *Moffatt,* 18 Ves. Jr. 394; Hill on Trustees, 547; Pomeroy's Eq. Juris. § 132; *Alner* v. *George,* 1 Camp. 392; 11 How. [U. S.] 675; 99 U. S. 388; 21 Fed. Rep. 82; 1 Johns. Ch. 520; *Reubens* v *Joel,* 13 N. Y. 498; *Goulet* v. *Asseler,* 22 id. 228; *Gould* v. *C. C. Nat. Bank,* 86 id. 83; *Hale* v. *Omaha Bank,* 49 id. 632; *Allison* v. *Abendroth,* 108 id. 470; Sedgwick on Dam. 31; Sutherland on Dam. 2–3; Weeks' Damnum Absque Injuria, § 4.) If there be such an action, such cause of action would not accrue until damages had been sustained. (Wood's Stat. of Lim. 364; *Daniels* v. *Newton,* 114 Mass. 539; *Mather* v. *Green,* 17 id. 60.) If an action could be maintained, the six years limitation, as prescribed by the Code of Civil Procedure, does not apply. (Code Civ. Pro. § 3343, subdiv. 7; 2 Blackstone's Com. 396; *Sheldon* v. *Sill,* 8 How. [U. S.] 449; *Gillett* v. *Fairchild,* 4 Denio, 82; 1 Parsons on Contracts, § 223; *Meany* v. *Head,* 1 Mass. 319; *O. Nat. Bank* v. *Alcott,* 46 N. Y. 17; *Lickbarrow* v. *Mason,* 6 East. 21, 27; Pomeroy's Eq. Juris. §§ 1234, 3343; *Jackson* v. *Parker,* 9 Cow. 81; Overton on Liens, § 1; Bouvier's Law Dict; *S. F. & M. Ins. Co.* v. *Allen,* 43 N. Y. 395; *Wynehamer* v. *People,* 13 id. 396; *Daubigny* v. *Duval,* 5 T. R. 606; *Holley* v. *Huggeford,* 8 Pick. 76; *Legg* v. *Evans,* 6 M. & W. 41; Code Civ. Pro. § 644; *Thurber* v. *Blanck,* 50 N. Y. 80; *Anthony* v. *Wood,* 96 id. 185.) The plaintiff's cause of action is to enforce against the defendants their liability as *pendente lite* purchasers, and is founded on the decree. (*Bishop of Winchester* v. *Paine,* 11 Ves. 197; *Gaskell* v. *Durbin,* 2 Ball & Beat. 169; *Tilton* v. *Coficid,* 93 U. S. 168; *Leitch* v. *Wells,* 48 N.

Y. 601; *Harrington* v. *Slade*, 22 Barb. 165; *Ex parte R. R. Co.* 95 U. S. 226; 4 Wait's Act. & Def. 189; *Fletcher* v. *Farrell*, 9 Dana, 372.) By the contract between Hovey and McDonald, a trust upon the award was created, and McDonald became a trustee. When McDonald obtained possession of the bonds, he held them as trustee for Hovey. And Riggs & Co., by the purchase of the bonds, with notice of the trust, became themselves trustees, and liable to execute the trust; and that liability continues, although they have sold the trust property, and even if they had disposed of the proceeds. (Snell. on Equity [Am. ed.] 307; Story's Eq. Juris. § 1231; Lewin on Trusts, 748, § 8; *Fisher* v. *Fields*, 10 Johns. 508; *Clark* v. *Southwicks*, 1 Curtis, 497; *Legard* v. *Hodges*, 1 Ves. 477; 1 Eq. Cas. Abr. 384; *Adair* v. *Shaw*, 1 Sch. & Lef. 262; *Gray* v. *Lewis*, L. R. [8 Eq. Div.] 543; *Earl Powlet* v. *Herbert*, 1 Ves. 297; *Findon* v. *Parker*, 11 M. & W. 775; *Matins* v. *Freeman*, 4 Bing. 395, *Daley* v. *Thompson*, 10 M. & W. 317, 318; *Ryan* v. *Blancks*, 4 B. & Ald. 401; Broom's Legal Max. 209; Story's Eq. Juris. § 453.) Equity will follow trust property or property charged with a lien, into whoseever hands it may come, with notice of the trust or lien, and will enforce the payment of the trust out of any property he may have, by a personal judgment, if necessary. (*Root* v. *R. R. Co.* 105 U. S. 215; *Norton* v. *Hixon*, 25 Ill. 453; *Carter* v. *Lipsey*, 70 Ga. 417; *Sheppard* v. *Taylor*, 5 Peters, 676; *Kuatchbull* v. *Hallett*, L. R. [13 Ch. Div.] 717, 729, 730; 5 Cent. L. Jour. 51, 75.) The defendants are estopped from denying that plaintiffs have a lien upon the proceeds of the bonds in their hands. (Freeman on Judgments, § 249.) No cause of action accrued to the plaintiffs against the defendants until the rendition of the final decree of the Supreme Court of the District of Columbia against their assignors, McDonald and White, on April 17, 1878. (57 N. Y. 627; 1 DeG. & J. 578; 2 Ball. & Beat. 169; 11 Ves. 197; 2 Johns. Ch. 444; 93 U. S. 168; 2 Dr. & W. 362; 95 U. S. 226; 105 Ind. 79; *Harrington* v. *Slade*, 22 Barb. 165; *Talbot* v. *Bell*, 5 B. Mon. 320, 326; *Blevins* v. *Alexander*, 4 Sneed, 497;

*Nickerson* v. *Babcock*, 29 Ill. 497; 1 Wait's Act. & Def. 41; 2 id. 119; *Tappan* v. *Whittemore*, 15 Blatchf. 441; *Gibson* v. *Choteau*, 13 Wall. 100; *Lynch* v. *Bernal*, 9 id. 325; *Montgomery* v *Hernandez*, 12 Wheat. 134; *Graves* v. *Coutant*, 31 N. J. [Eq.] 781; *Taylor* v. *Taylor*, 43 N. Y. 584; *Trecothick* v. *Austin*, 43 Mas. 16; *Rice* v. *Hosmer*, 12 Mass. 126; *Walden* v. *Bodley*, 9 How. [U. S.] 48; *Webb* v. *Barnwell*, 116 U. S. 193; Angell on Lim. § 215; *Borer* v. *Chapman*, 119 U. S. 602.) Riggs & Co. can set up no defense to this action that could not be set up by their assignors, McDonald and White. (48 N. Y. 601; 2 Story's Eq. Juris. 908.) The Code of Civil Procedure alone determines the period of limitation applicable to any action. (2 R. S. 301; Laws of 1880, chap. 254; Code Civ. Pro., § 414.) Even if plaintiff had an adequate remedy at law, it is not available as a defense in this action, as it was not pleaded in the answer; and no judgment can be rendered except in equity, and upon the cause of action stated in the complaint. (*Town of Mentz* v. *Cook*, 108 N. Y. 508; *Comes* v. *Harris*, 1 id. 226; *Bell* v. *Merrifield*, 109 id. 207; *Romeyn* v. *Sickles*, 108 id. 652; *Wheelock* v. *Lee* 74 id. 500; *Graham* v. *Read*, 57 id. 681; *Cole* v. *Reynolds*, 18 id. 76; *Wright* v. *Hooker*, 10 id. 59; *Bailey* v. *Ryder*, 10 id. 368, 370.) The action for money had and received is an *equitable* action. (*United States* v. *Westborough*, Davies [U. S.] 154; 4 Wait's Act. & Def. 469; *Buel* v. *Boughton*, 2 Den. 91; *Colville* v. *Besley*, id. 142.) The limitation applicable to an equitable action is ten years. (*Brinkerhoff v. Bostwick*, 99 N. Y. 198.) And the cause of action would not accrue until final judgment establishing plaintiff's lien. (4 Wait's Act. & Def. 470.) In any event, in order to maintain the action, there must be money in the defendants' hands to which the plaintiff is *immediately entitled*. (4 Wait's Act. & Def. 470; *Butterworth* v. *Gould*, 41 N. Y. 451; *Cronin* v. *Patrick Co.*, 4 Hughes, 524; *Combs* v. *Hodge*, 21 How. [U. S.] 397, 406; Burroughs on Pub. Sec. 252; *Scotland County* v. *Hill*, 112 U. S. 185.) Although the defendants may have purchased the bonds in good faith, as a matter of fact, yet, in equity, the

purchase was a fraud upon the plaintiff's rights. (*Green* v.
*White*, 7 Blatchf. 244; *Murray* v. *Finster*, 2 Johns. Ch.
157; *Willoughby* v. *Willoughby*, 1 Term Rep. 767; *LeNeve*
v. *LeNeve*, 3 Atk. 654; *Bushnell* v. *Bushnell*, 1 S. & L. 100;
1 Story's Eq. Juris. 333, 395; *Smith* v. *Cottrell*, 94 Ind. 397.)
No cause of action accrued until the action could have been
maintained.   And until the controversy between Hovey and
McDonald, upon the contract, had been determined, Hovey
could not have maintained an action against defendants *with-
out making McDonald a party*. (1 McAlister [U. S.] 37;
17 How. [U. S.] 141; Mitf. & Tyler's Pl. 20; *Mallow* v.
*Hinde*, 12 Wheat. 195; *Peyser* v. *Wendt*, 87 N. Y. 325; *O.
L. & D. Co.* v. *Price*, 87 id. 548; *Field* v. *Mayor, etc.*, 6 id.
187; *Seymour* v. *R. R. Co.*, 25 Barb. 302; *Brinckerhoff* v.
*Bostwick*, 99 N. Y. 193.)

*Wm. D. Shipman* for respondents.   The plaintiffs' cause of
action, is either an action upon an implied contract obligation
or liability, within the meaning of the subdivision 1, or an
action to recover damages for an injury to property, within
the meaning of subdivision 3, of section 382 of the Code of
Civil Procedure, and is, therefore, barred in six years after
the cause of action accrued. (*Pierson* v. *McCurdy*, 33 Hun.
520; 100 N. Y. 608; 22 Wkly Dig. 253; *Hatch* v. *Cobb*, 4
Johns. Ch. 559; *Kempshall* v. *Stone*, 5 id. 193; *Morss* v.
*Elmendorff*, 11 Paige, 287; *Clarke* v. *R. R. R. R. Co.* 18
Barb. 356; *Marquat* v. *Marquat*, 12 N. Y. 336; *Phillips* v.
*Gorham*, 17 id. 270; *N. Y. I. Co.* v. *N. W. Ins. Co.* 23 id.
357, 360; *Carr* v. *Thompson*, 87 id. 162, 2 R. S. 301; *Borst*
v. *Corey*, 15 id. 509; Wood on Lim., § 232; *Diefenthal* v.
*Mayor, etc.* 111 N. Y. 338; Code Civ. Proc., §§ 382, 3343;
*Carr* v. *Thompson*, 87 N. Y. 160; *Drake* v. *Wilkie*, 30 Hun.
537; *Butler* v. *Johnson*, 111 N. Y. 217, 218; *People* v.
*Haines*, 49 N. Y. 587; *Arnold* v. *H. R. R. R. Co.* 55 id.
661; *Astor* v. *Hoyt*, 5 Wend. 605; *Erwin* v. *U. S.*, 97 U. S.
392; 31 Ky. 559; *Ins. Co.* v. *Stimson*, 93 U. S. 30; *Phelps*
v. *McDonald*, 99 U. S. 302; *Comegys* v. *Vasse*, 1 Pet. 195;

*Gregory* v. *Morris*, 96 U. S. 623; *Husted* v. *Ingraham*, 75 N. Y. 259; *Beall* v *White*, 94 U. S. 386; *Fowler* v. *Rapley*, 15 Wall. 335, 336; 2 Story's Eq. Juris., § 1216; 2 Kent's Comm. 634; *Kirkman* v. *Shawcross*, 6 Term. Rep. 14; *Yates* v. *Joyce*, 11 Johns. 136; *Lane* v. *Hitchcock*, 14 id. 213; *Van Pelt* v. *McGraw*, 4 N. Y. 110; *Manning* v. *Monaghan*, 23 id. 539; *Husted* v. *Ingraham*, 75 id. 259; *Read* v. *Markle*, 3 Johns. 523; *Morgan* v. *Plumb*, 9 Wend. 287; Angell on Lim., § 188; *Dunn* v. *Hornbeck*, 72 N. Y. 89; 2 Story Eq. Jur. § 1521; *Kennedy* v. *Greene*, 3 Myl. & K. 722; *Wood* v. *Carpenter*, 101 U. S. 141; *Bailey* v. *Glover*, 21 Wall. 342; *Hoyt* v. *Sprague*, 103 U. S. 637; *Murray* v. *Ballou*, 1 John. Ch. 566; *County of Warren* v. *Marcy*, 97 U. S. 105, 106; *Murray* v. *Lylburn*, 2 John. Ch. 441; *Murray* v. *Finster*, 2 id. 155; *Heatley* v. *Finster*, id. 158; Bigelow on Estop. [3d ed.], 60; Wade on Notice, § 375; *B'k of Columbia* v. *Patterson*, 7 Cranch, 303; *Shelton* v. *Johnson*, 4 Sneed 672; *Holbrook* v. *N. J. Z. Co.*, 57 N. Y. 625.)

*John Selden* for respondents. Neither Mr. Elliot nor his copartners, were bound in *personas*, by the decree of April 17, 1878. (Thompson's Dig. Laws, D. C. 289-290; *Diggs* v. *Eliason*, 4 Cranch. 619; *Jackson* v. *Bk. U. S.*, 5 id. 1; *Thompson* v. *Beveridge*, 3 Mackey, 170; Bigelow on Estoppel [3d ed.], 60; Wade on Notice, § 375.) The recovery of the decree of April 17, 1878, was no condition precedent to the prosecution by the plaintiffs of an action against Riggs & Co. (R. S. U. S., § 1069; Act Cong. March 3, 1887, § 1; 24 Stat. 505; Story Eq. Pl., § 156; 1 Dan. Ch. [5th Am. ed.] 281.) The plaintiffs have no cause of action against the defendant, upon or under the decree of April 17, 1878. (Code Civ. Pro., § 376.) The lien of the plaintiff upon the bonds was personal property. (*Sonlard* v. *U. S.*, 4 Pet. 512; *People* v. *N. Y. & M. B. R. Co.*, 84 N. Y. 569; *Erwin* v. *U. S.*, 97 U. S. 396; *Gunn* v. *Barry*, 15 Wall. 622, 623; *Ins. Co.* v. *Stimson*, 103 U. S. 30.) An injury to the interest of the plaintiffs, as leinors, in the bonds or their proceeds, was an actionable injury within the defini-

tions contained in section 3343 of the Code. (*Weatherhead* v. *Baskerville*, 11 How. [U. S.] 358; *Phelps* v. *McDonald*, 99 U. S. 303.) An action for damages lies for the injury or destruction of a lien, whether legal or equitable. (*Peck* v. *Jenness*, 7 How. [U. S.] 620; *Smith* v. *Plummer*, 1 Barn. & Ald. 582; 2 Story Eq. Juris., § 1216; 2 Kent's Com. 634; *Kirkland* v. *Shawcross*, 6 Term Rep. 14; *Beall* v. *White*, 94 U. S. 386; *Fowler* v. *Rapley*, 15 Wall. 335-336; 4 Kent's Com. [11th ed.] 161; 2 Jones on Mortgages, § 696; Jones on Chattel Mortgages [2d ed.] § 447; Jones on Pledges, § 434; *Pierson* v. *McCurdy*, 33 Hun, 529; *Bayne* v. *U. S.*, 93 U. S. 643; *U. S.* v. *State Bk.*, 96 id. 35; *Nash* v. *Torone*, 5 Wall. 702.) Since the plaintiffs have a remedy, if any, at law, their remedy, if any, in equity must be governed by the limitation applicable to their remedy at law. (*Clarion Bk.* v. *Jones*, 21 Wall. 339; *Haywood* v. *Nat. Bk.*, 96 U. S. 614; *Litchfield* v. *Ballou*, 114 id. 193; 2 Story's Eq. Juris., §§ 1215–1217; *Pierson* v. *McCurdy*, 33 Hun, 533; *Speidel* v. *Henrici*, 120 U. S. 386; *U. S.* v. *Beebe*, 127 id. 347.) The plaintiffs were without remedy, in a court of equity, against the firm of Riggs & Co. (*Parkersburg* v. *Brown*, 106 U. S. 500; *Litchfield* v. *Ballou*, 114 id. 192; *Buzard* v. *Houston*, 119 id. 353, 355.) Limitation at law runs from the time that the action might have been commenced. (*Hoyt* v. *Sprague*, 103 U. S. 637; *Wilcox* v. *Plummer*, 4 Pet. 181; *Army* v. *Dubuque*, 98 U. S. 474; *Scoville* v. *Thayer*, 105 id. 153; *Phelps* v. *Elliott*, 35 Fed. Rep. 455, 462; *Kenney* v. *Robinson*, 52 Mich. 393; Story Eq. Pl., § 742; *Bowne* v. *Joy*, 9 Johns. 221; *Walsh* v. *Durkin*, 12 id. 99; *Stanton* v. *Embrey*, 93 U. S. 554; *Ins. Co.* v. *Brune*, 96 id. 592; Banning on Lim. 29, 270; Wood on Lim., § 177; 1 Robinson's Practice, 484, 485, 504; *Read* v. *Markle*, 3 Johns. 523; *Morgan* v. *Plumb*, 9 Wend. 287.) Limitation began to run against any cause of action by the plaintiffs against Riggs & Co. at least as early as the 4th day of March, 1876, when the obstacle, if any, arising from the decrees passed by the Special Term in *Hovey* v. *McDonald*, was removed by the reversal of those decrees in

the General Term. (*Phelps* v. *Elliott*, 29 Fed. Rep. 54.) The cause of action, if any, of the plaintiffs, is governed and barred by the limitation of six years prescribed in subdivision 3 of section 382 of the Code of Civil Procedure. (Angell on Lim., § 188; *Dunn* v. *Hornbeck*, 77 N. Y. 89; *New Albany* v. *Burke*, 11 Wall. 107; *Kennedy* v. *Greene*, 3 M. & K. 722; *Wood* v. *Carpenter*, 101 U. S. 141; *Hoyt* v. *Sprague*, 103 id. 637; *Marsteller* v. *M'Clean*, 9 Cranch. 159.)

BRADLEY, J.   The case was determined by the court below in favor of the defendants upon the defense of the statute of limitations.   And that is the main question for consideration upon this review.

By the contract, between the plaintiffs and McDonald, they were to have, for their services in aiding him in the prosecu- tion of his claim before the mixed commission on British and American claims, a sum equal to twenty-five per cent of the amount which should be allowed or awarded to him.   And in their behalf "the payment of the said sum of twenty-five per cent was to be made a lien upon the claim, and upon any draft, money or evidence of indebtedness which might be paid or issued thereon."

After the award was made in favor of McDonald for $197,190 in gold, he assigned it to White, and thereupon, and while the award yet remained in the hands of the diplomatic representatives of the British Government, the plaintiffs filed their bill against McDonald and White, in the Supreme Court of the District of Columbia, to restrain them from disposing of, collecting or receiving more than three-fourths of the amount of the award, and for a decree establishing the plaintiffs' lien, and a temporary injunction was issued in their behalf.   Upon an order being made to that effect, and appointing George W. Riggs receiver, a portion of the fund was paid over to White, as assignee of McDonald, and the balance was taken by the receiver, with directions to invest it in a certain class of bonds of the District of Columbia, which he did.   The defendants' demurrer to the plaintiff's bill having been afterward sustained

and decree entered dismissing the bill, the court ordered that the bonds held by the receiver be handed over to McDonald and White, which was done, and thereupon they transferred them for value to Riggs & Co., of which firm George W. Riggs was a member, and the firm thereupon surrendered those bonds and procured new ones to be issued to it, and afterwards sold them in the market to divers purchasers. In the mean time, the plaintiffs had taken an appeal to the General Term of the Supreme Court of the District of Columbia, from the decree, dismissing their bill of complaint, and it was reversed in March, 1876, and the suit remanded to the Special Term, with leave to the defendants therein to answer, which they did. And those defendants having failed to pay into court to the credit of the suit, the sum of $49,297.50, as directed by its order, their answer was stricken out and from the files, and decree was taken *pro confesso* against the defendants, and on the 17th day of April, 1878, a decree absolute was made, by which it was adjudged that McDonald and White pay to the plaintiffs the sum of $49,297,50, and that the latter have a lien upon the claim of McDonald, against the United States, as awarded by the mixed commission on British and American claims and upon any draft, money, evidence of indebtedness or the proceeds thereof, with interest from April 17, 1878, This action was brought within six years after the decree last mentioned was made, and more than six years after such reversal of the decree dismissing the complaint.

The court below held that the statute of limitations commenced to run from a time not later than the time of such reversal, and holding that plaintiffs had a remedy by action at law against the defendants resulting from that sale, concluded that the right of action was barred on the expiration of six years. The defendants firm having purchased the bonds of McDonald and White or one of them *pendente lite*, charged with knowledge of the pending action and its purpose, were bound by the result of the litigation in the suit against McDonald and White as effectually as if they had been parties to it, so far as related to the lien of the plaintiffs upon the

property. (1 Story Eq. Jr. § 405; *Heatley* v. *Finster*, 2 John. Ch. 158; *Murray* v. *Lylburn*, id. 441; *Jackson* v. *Stone*, 13 John. 447; *Jackson* v. *Losee*, 4 Sandf. Ch. 381; *Tilton* v. *Cofield*, 93 U. S. 163; *Clark* v. *Farrow*, 10 B. Monroe, 446; 52 Am. Dec. 552; *Shelton* v. *Johnson*, 4 Sneed, 672; *Stone* v. *Connelly*, 1 Met. [Ky.] 652; 71 Am. Dec. 499; *Green* v. *Rick*, 121 Penn. St. 130; 6 Am. St. R. 760.

And for the purpose of the lien the defendants may be deemed to have held the bonds taken from McDonald and White and the re-issue to them, in trust for the plaintiffs'while they had them, (*Murray* v. *Ballou*, 1 John. Ch. 566); and in like manner the proceeds of the sale, (2 Perry on Trusts, § 838; *Sadler's Appeal*, 87 Penn. St. 154; *Pennell* v. *Deffell*, 4 DeGex. M. & G. 372; *Knatchbull* v. *Hallett*, L. R. 13 Ch. Div. 696; 36 Eng. Rep. 779; *Sheppard* v. *Taylor*, 5 Pet. 675.)

In view of the relation of privity in which the defendants were placed, with McDonald and White, by force of the doctrine of *lis pendens* somewhat broadened by the fact of actual notice, on their part, of the situation, it became the duty of the defendants, when the decree was obtained against McDonald and White, to pay to plaintiffs, from the proceeds of the sale of the bonds, an amount sufficient to satisfy their lien upon them. If the defendants had then held the bonds, such decree may have been effectual to have reached them through the execution of the judgment.

The relation and situation of a purchaser *pendente lite*, is such that his protection against the result of the then pending action must be sought in it, and for that purpose he may step in and defend, or the plaintiff in it, to charge him *in personam*, may cause him to be brought in as a defendant. (*Harrington* v. *Slade*, 22 Barb. 161; *Ex Parte Railroad Co.*, 95 U. S. 221. And when the purchaser is so brought in and made a defendant, he will be treated as such party from the time of the commencement of the action, and consequently the statute of limitations will in such case be no more available to him than to the original defendants. And such would be the effect of the judgment as one *in rem*, although the purchaser

is not made a party to the action.    (*Harrington* v. *Slade,*
*supra*; *Walden* v. *Bodley,* 9 How. U. S. 34; *Fletcher* v. *Fer-
rel,* 9 Dana, 372; 35 Am. Dec. 143; *Talbott* v. *Bell,* 5 B.
Monroe, 320; 43 Am. Dec. 126; *Jackson* v. *Losee,* 4 Sandf.
Ch. 381.)    This binding character and effect, are deemed
essential to the proper administration of justice and to put
an end to litigation.    (*Bellamy* v. *Sabine* 1 DeGex. & J. 566,
578.)    The defendants not having been made parties defend-
ant in that suit, the decree as against them, could be treated only
as a judgment *in rem*, and, as they had disposed of the bonds, it
was ineffectual as such for the purpose of its execution.    And
it may be that their duty to pay to the plaintiffs the proceeds
of the bonds, was but a liability enforceable by action to charge
them *in personam.*

    While an action in equity might be maintained to charge
the defendants as trustees of the fund, and for an accounting
as for the proceeds of the bonds, for the purpose of relief
founded upon the lien, it is contended that the plaintiffs had
ample remedy by action at law for destruction of their lien, or
as for money had and received by the defendants to the plain-
tiffs' use.    The question whether an action at law accrued to
the plaintiffs against the defendants more than six years before
this was commenced, is an important one in this case.    For if
that was the situation, although this action, as brought, was
properly equitable in form, the statutory limitation of six
years was applicable upon the well settled principle, that when
there is a concurrent remedy at law and in equity, the limita-
tion is the same in both forms of action, and the statutory bar
of that at law controls.    (*Borst* v. *Corey,* 15 N. Y. 505; *In re
Neilley,* 95 N. Y. 383.)    The plaintiffs may have maintained
a suit in equity against the defendants, joining McDonald and
White as co-defendants, for the purpose of perfecting their
lien and to charge Riggs & Co. personally, after, as well as
before, the sale by the latter of the bonds.    But it is by no
means clear that an action at law would have been maintain-
able by the plaintiffs against the defendants in this action,
founded upon the lien to recover the amount of their claim

prior to the recovery of the decree against McDonald and White. The plaintiffs' right to a lien existed in contract, entered into before the award was made by the commission, by the terms of which, the payment of their claim for services was to be made a lien upon it. This was an equitable lien. It was neither *jus ad rem* nor *jus in rem*. It constituted no estate or property in the subject of it, nor any right which could be the basis of a possessory action. It was simply an encumbrance or charge upon it. The legal title remained in McDonald. (2 Story Eq. Juris. § 1215 ; 3 Pomeroy Eq. Jur. § 1233.) For the purposes of the lien, the proceeds of the sale took the place of the bonds, and the enforcement of it was exclusively within the province of a court of equity by suit, in which McDonald was a necessary party defendant until as against him the lien was perfected. And although the assignment must be deemed to have been taken by White, subject to all the equities against his assignor (*Bush* v. *Lathrop*, 22 N. Y. 535) it could not be assumed that he had no right to be heard. The contract upon which the plaintiffs relied for the lien, was executory, and the effectual perfection of it was dependent upon performance upon their part, of that required of the plaintiffs, to entitle them to payment. In equity it had effect as a lien, dependent on such performance, upon the principle that what is agreed and ought to be done is regarded as done. And if anything was requisite to accomplish it, the court could have directed specific performance of the contract. (Pomeroy Eq. Jur. § 1237 ; *In re Howe*, 1 Paige 125, 130 ; *Hale* v. *Omaha Nat. Bank*, 49 N. Y. 626 ; *McCaffrey* v. *Woodin*, 65 id. 459 ; *Payne* v. *Wilson*, 74 id. 348 ; *Seymour* v. *C. & N. F. R. R. Co.*, 25 Barb. 284 ; *Mitchell* v. *Winslow*, 2 Story, 630 ; *Metcalfe* v. *Archbishop of York*, 1 Mylne & C. 547.) The only means for the enforcement of the lien was in equity. (*Pinch* v. *Anthony*, 8 Allen, 536, 539 ; *Milliman* v. *Neher*, 20 Barb. 37.) It would have been otherwise if the contract had contained an assignment of the claim of the plaintiffs. That might have furnished a right of action at law, if the claim may be said to have had a potential exist-

ence at the time it was made. (*Jones* v. *Mayor, etc.*, 90 N. Y. 387.)   And as held in *McCaffrey* v. *Woodin* (*supra*), and *Gregory* v. *Morris* (96 U. S. 619), when with the equitable lien is given the right to take the property, the exercise of such right perfects the lien, and enables the party to assert it as a defense or in support of an action founded upon the right resulting from the execution of such power, and is supported by the lien.   And in the like case of *Wisner* v. *Ocumpaugh* (71 N. Y. 113), the defendant was protected in the exercise of such right and the defense resting upon the lien, was deemed equitable.   In *Hale* v. *Omaha Nat. Bank*, (*supra*) no right by the terms of the contract, for the lien, seems to have been given to take the property, and the possession, as there appeared, was taken by the defendant without any right. The question of parties was not raised in that case.   Nor did the court hold that an action at law, could be maintained by the plaintiff, but it was held that the facts alleged were sufficient to support the action as equitable in character.   And on the review of a subsequent trial of the same action (64 N. Y. 550) nothing to the contrary was held.   In *Husted* v. *Ingraham*, (75 N. Y. 251) the plaintiffs had an equitable lien, and it was held, that the only relief to which the plaintiffs were entitled was equitable, and consequently they could not recover in the action for alleged conversion of the property, although it had been sold by the receiver of the parties, who had the title, but that the plaintiffs had a remedy in equity against the receiver founded upon the lien, to obtain the proceeds of the sale.   The character of the equitable lien, resting in the contract between McDonald and the plaintiffs, was such that it gave the latter the right to follow the subject of it, and apply a remedy, which would have operated directly upon it, to realize the purpose of its creation.   This was the purpose of the suit brought against McDonald and White.   That suit was founded upon the contract, and its purpose was to perfect and execute the lien.   This could be done in equity only.   The existence of the lien and the right to enforce it were contested by McDonald.   And treating, as we do, the defendants as pur-

chasers *pendente lite*, charged with notice of the action between the parties to the contract and its purposes, the rights of the parties to this action or to the subject in controversy, were dependent upon the result of that suit, and the final judgment there was conclusive upon them. It would, therefore, seem that during its pendency, the statute of limitations would not run in favor of such a purchaser as against the party who successfully establishes his right as against the *pendente lite* seller. Otherwise the doctrine of *lis pendens* might be defeated, and thus the result of a litigation rendered ineffectual. It would result in a multiplicity of suits for the protection of rights dependent upon the final determination of the litigation pending between the primary parties to the controversy. The theory of the doctrine of *lis pendens* is to preserve the situation, as it is when the original litigation is commenced, until its termination, that the successful party may then take the fruits of it without interruption from another, who may have, during its pendency, sought to obtain some right to the property in controversy. (*Tilton* v. *Cofield*, 93 U. S. 163 ; *Lamont* v. *Cheshire*, 65 N. Y. 36, and cases there cited.) Bennett, in his work on *Lis Pendens* (212), states the rule to be that in the ordinary case of a *pendente lite* purchaser of the subject of litigation, the statute of limitations cannot be invoked as against the successful litigant to avoid the results of the application of the rule of *lis pendens*. This is in harmony with the situation of privity existing between the litigating seller and the *pendente lite* purchaser, with the fact that the latter is bound by the determination of such pending action, and with the principle enunciated in *Harrington* v. *Slade* (22 Barb. 161); *Walden* v. *Bodley* (9 How. U. S. 34); *Tilton* v. *Cofield* (93 U. S. 163). Any action which the plaintiffs could maintain against the defendants, must be founded upon their equitable lien. And it would, therefore, seem that the situation of the defendants in their relation to the primary suit, was such that during its pendency the statute of limitations would not run in their favor to bar any form of action having for its object the satisfaction of the plaintiff's

claim, founded upon the security afforded by such lien.   If that view is correct, it follows that no right of action at law either for the destruction of the lien or for money had and received, accrued to the plaintiffs against the defendants prior to the time of the recovery of the decree against McDonald and White. And assuming that there was a destruction of the lien produced either by the surrender of the old and taking the new issue of bonds or by the sale of the latter, it does not necessarily follow that an action at law would at any time lie against the defendants to recover damages for such destruction.   It was not found that the defendants so surrendered the bonds or sold those reissued to them with the intent to defraud or injure the plaintiffs in their lien or with any purpose to defeat it.   (*Yates* v. *Joyce,* 11 Johns. 136; *Lane* v. *Hitchcock,* 14 id. 213; *Gardner* v. *Heartt,* 3 Denio, 232.)   The case last cited was an action by a mortgagee for an alleged negligent destruction of his lien, by doing injury to the mortgaged premises, which had that effect.   The court held that fraudulent intent was essential to support the action, and that, as the lien of the mortgagee gave him no title to the land, the defendant was not liable to him for injury to it caused by his negligence, although it resulted in the destruction of his lien.   That is within the principle of those earlier cases.   They are all cited in *Van Pelt* v. *McGraw* (4 N. Y. 110), and their doctrine is there applied to afford a remedy.   The facts found in the present action, as represented by the decision of the court, do not within that principle establish the existence, at any time, of such a cause of action against the defendants. The cause of action for the purpose of such a remedy is in tort.   Its gravamen is a fraudulent intent or wrongful purpose to impair or destroy the lien, and to support such an action the facts must be such as to warrant the inference to that effect.   No different doctrine was necessarily recognized in *Hale* v. *Omaha Nat. Bk.* (64 N. Y. 550), or in *Husted* v. *Ingraham* (75 N. Y. 251).   The plaintiffs had no title to the bonds, and in the strictly legal sense of the term, their lien is said not to be property, although analagous to property.   (3

Pomeroy Eq. Jur., § 1234.) And a lien is generally recognized
at law to exist only when it is connected with the possession or
the right to the possession of the subject of the lien.   (2 Story
Eq. Jur., § 1216.)     The defendants had the legal title to the
bonds transferred to them, also to those taken in their stead by
the new issue made to them, and which they afterwards sold.
It may be that they made such surrender, took the new bonds
and sold the latter in good faith ·in fact, and without any
intent to impair or defeat the plaintiff's lien.    While the right
of the plaintiff, as against the defendants, resulting from the
final decree, was not affected by the decree and direction
founded upon the sustaining of the demurrer, the fact of such
decree dismissing the complaint first obtained in their suit
with McDonald and White, was a circumstance bearing upon
the good faith of the defendants by way of relief from the
imputation of actual purpose to impair the plaintiff's lien by
the disposition made of the bonds.    In view of the doctrine
before stated, and as declared in *Gardner* v. *Heartt*, the
defendants may not be chargeable in an action as for impair-
ment or destruction of the plaintiffs' lien.    And, therefore,
upon the facts found as represented by the decision of the trial
court, the conclusion is not warranted that any right of action
at any time arose as for the destruction of the lien.    But on
the contrary, the facts so found are consistent with good faith,
in fact, on the part of the defendants, in purchasing the bonds
and disposing of them.    So far as the contention on the part
of the defendants is dependent for its support upon their bad
faith in the transaction, it is not sustained.    And the assertion
by a party of his wrongful act by way of protection against
liability will not usually be taken for his advantage further
than the facts fairly require.    The plaintiffs do not assert the
destruction of their lien.    The question also arises, was the
lien destroyed, in the sense sought to be applied, by the
disposition made by the defendants of the bonds so as to enable
them to assert the destruction of it by way of relief from
liability?    It is true that the opportunity to reach the bonds
held by the receiver, is denied to the plaintiffs by the surrender

of them at the time the new ones were issued to the defendants. The latter bonds represented the former, and so did the proceeds of the sale in the currency received by the defendants. There is no propriety, either legal or moral, in the assertion of the defendants, for the purpose of putting themselves in the wrong, that those new bonds or the money derived from the sale, was not a substitute for those held by the receiver which they purchased. An equitable lien has the nature of or is analagous to a trust, and it is not for the party making the conversion into other securities to thus defeat the trust. He cannot derive any such advantage, but the substituted securities or proceeds in his hands are subject to it. And for the purpose of relief he is treated as having made the substitution for the benefit of the beneficiary if the latter elects to so treat it. This was the situation of the defendants in their relation to the plaintiffs, and that is the situation in which the plaintiffs seek to treat the defendants. The sale of securities held in trust or subject to an equitable lien, might be thought judicious by the holder under some circumstances. He might deem it so in case of a falling market or of an apprehended decline in value, or for the purpose of realizing a larger income from the fund represented by them. It would hardly be claimed that from a sale, in such case, a liability would arise as for a destruction of the lien, although he might be liable to account for the value of the securities if his action in making the sale was not justified or ratified. Nor would the party, in that relation, making such sale, or in case of conversion of the securities into others, be permitted to successfully assert that he had committed a wrongful act, which might have produced a remedy to the beneficiary of the lien or trust, so as to deny to the latter the right of affirmance of the act of conversion and substitution. The plaintiff's claim does not rest upon the assertion of any wrong on the part of the defendants in making the disposition they did make of the bonds. The action was brought to enforce their lien upon them and without knowledge of the sale, and afterwards having learned of the disposition of the bonds, the plaintiffs proceed in affirmance of

the sale, and seek through an accounting by the defendants for the proceeds of the sale, the relief to which the plaintiffs, by virtue of their lien, may be entitled by way of satisfaction of their claim of which such lien is the incident. When the plaintiffs obtained the decree against McDonald and White, it became the duty of the defendants to hand over to them such proceeds, and concurrently in time with the arising of such duty accrued to the plaintiffs the right to demand its performance.

The question relating to an action at law for destruction of the lien, seems to require here no further consideration. Some further attention may be given to the question, whether the plaintiffs had a right of action at law against the defendants as for money had and received by them to the use of the plaintiffs. And, if so, when the right to such action accrued to them. When one party receives or has money to which another is entitled, an action in that form, may be maintained, and the law will imply assumpsit for its support. And although the action rests upon a legal right, the nature of the remedy afforded by it, is such as to raise for determination the question as to which party in equity and good conscience is entitled to the money in controversy. Hence, it is called an equitable action. (*Buel* v. *Boughton*, 2 Denio 91; *Hathaway* v. *Cincinnatus*, 62 N. Y. 447.) The plaintiffs were equitably entitled to the proceeds of the sale of the bonds, to the extent of their claim, by reason of their lien upon them. The right of such action accrued when it became the duty of the defendants to pay the money over to them. That duty and liability of the defendants were dependent upon the effectual establishment of the lien against McDonald. A defeat of the plaintiffs, upon the merits, in the suit against McDonald and White, would have denied to the former the right to assert any lien as against the defendants. Such was the effect of the judgment on the demurrer dismissing the bill, so long as it remained unreversed. The liability of the defendants in such an action, was therefore dependent upon the result of that suit, and if they had paid the plaintiffs the amount claimed by them, and that suit had resulted in favor

of McDonald, it is not seen that the defendants would have had any remedy against their assignor, of the bonds, for reimbursement. It would have been treated as a payment without any duty or liability to make it. McDonald had the right to contest the plaintiffs' alleged claim of lien, and it was not in the power of the defendants to deny to him that right, or to render his successful denial of it ineffectual. This was the situation of the defendants in their relation to the other parties interested, until the final decree was obtained against McDonald and White, and until then the defendants could not assume that they were at liberty to pay anything to the plaintiffs from the proceeds of the sale of the bonds. When then did the right of action at law accrue to the plaintiffs against the defendants? As before suggested the lien upon which the plaintiffs relied existed in executory contract, and was cognizable in equity only, until it was perfected either by recognition or contract of McDonald, in terms making it so *in presenti* after performance by the plaintiff, or by decree to that effect. It being a lien in equity, and subject to equitable cognizance only, it furnished no support to an action at law for affirmative relief until it was in some manner perfected or established. (*Field* v. *Mayor, etc.*, 6 N. Y. 179, 187; *Chase* v. *Peck*, 21 N. Y. 581; *Payne* v. *Wilson*, 74 N. Y. 348; *Otis* v. *Sill*, 8 Barb. 102.) Reference is also made to the cases before cited. The contract in question may be treated as an agreement to give the plaintiffs a lien dependent upon the terms and condition of the contract, and while it attached as a lien in equity upon the award when made, it was not by force of the contract made a specific lien *in presenti* or recognizable at law until it was perfected by the decree. And even then no right of action at law upon the lien as such existed to obtain the possession of the property or its proceeds as that remedy is equitable only, but then, if at all, the right of action at law, founded upon the right to the fund supported by the lien, accrued to the plaintiffs to treat the proceeds as money had and received to their use by the defendants, and to demand its payment, because then, and not until then, it

became the duty of the defendants to recognize the right of the plaintiffs in that respect. Up to that time the lien was not only not recognized by McDonald, but was contested by him. And until then the plaintiffs' remedy must have been founded solely upon the alleged lien, and enforceable in equity only. The action would necessarily have been to charge the property or its proceeds with it, and for consequent relief. This is apparent for the reason, if no other, that the defend ants were by their purchase *pendente lite* placed in privity with McDonald and bound by the result of the then pending suit; and their right and duty, as related to the plaintiffs, were involved in it, dependent upon its result and determined by it. It was not until then that the duty of the defendants arose to discharge the plaintiffs' lien, or that the latter could enforce the performance of that duty by an action as for money had and received to their use.

The case of *Pierson* v. *McCurdy* ( 33 Hun 521; affirmed 100 N. Y. 608 ), has not necessarily any essential application to the question here. There the fund in controversy belong ing to the company represented by the plaintiff, had been wrongfully paid to and taken by the defendant. There was in that case the legal title to support an action for money had and received, and the right to maintain it arose when the money was thus unlawfully appropriated. Reference is also made to what has already been said on the subject of the right of action against the defendants as bearing upon the question lastly considered.

These views lead to a conclusion that the judgment should be reversed and a new trial granted, costs to abide the event.

HAIGHT, J. (dissenting)  This action was brought to have the defendants declared to be the trustees of certain bonds of the District of Columbia, for the benefit of the plaintiffs, and that the plaintiffs have a lien upon and a right to such bonds, etc. This action was brought on the 16th day of April, 1884. The answer, among other things, alleges that the cause of action did not accrue within six years prior to the commence-

ment of this action. The trial court sustained this defense and dismissed the complaint.

This action was brought against the defendant's testator, John Elliott, who alone was served with process. The other defendants were the surviving partners of Riggs & Co. In the mouth of June, 1873, one Augustin R. McDonald entered into an agreement with the plaintiffs, by which they were to aid him in the prosecution of a claim which he then had pending before the mixed commission on British and American claims, under the treaty of May 8, 1871, for the value of a large quantity of cotton. Under the agreement the plaintiffs were to receive, as compensation, a sum equal to twenty-five per cent of any amount that was allowed on the claim, which was to be made a lien thereon, and upon any draft money or evidence of indebtedness which might be paid or issued thereon. In the month of September, 1873, an award was made upon the claim, for the sum of $197,190 in gold, to be paid by the government of the United States. In October, 1874, the plaintiffs filed their bill in equity in the Supreme Court of the District of Columbia, against McDonald and one White, to whom McDonald had assigned the award, in which bill the plaintiffs asked to have their claim established at the sum of $49,297.50 in gold, and that it be declared a lien upon the claim and upon the certificate of the amount allowed thereon, and upon all moneys which might become due in respect thereto. In February, 1875, an order was made, by consent of the parties, under which one-half of the award was paid over to White, under the assignment made to him by McDonald, and the other half of the award was paid over to George W. Riggs, as receiver, for him to hold subject to the claims, liens and rights of the plaintiffs and of one Phelps, as assignee, to be determined by the court. Riggs, as receiver, under an order of the court, invested the funds so received by him, in 3-65 bonds of the District of Columbia. The defendants in that action, having demurred to the bill of complaint, the Supreme Court of the District of Columbia, on the 24th day of June, 1875, made a decree, in and by which it was

ordered, adjudged and decreed that the demurrer be sustained, and that the bill be dismissed, with costs, and on the twenty-eighth day of June, thereafter, the same court made another decree, in which the receiver was directed to pay the funds belonging to the case, in his hands, to the defendants, McDonald and White, and that thereupon the receiver should be discharged. McDonald thereupon applied to Riggs, the receiver, for a surrender and delivery to him of the bonds held by Riggs, as receiver, and thereupon Riggs, the receiver, made personal application to the judge holding the court at which the decree was made, for instructions as to the delivery of the bonds to McDonald, and was informed by the judge that the delivery should be made. Thereupon Riggs, the receiver, did deliver the bonds to McDonald. Upon the same day McDonald sold the bonds to the firm of Riggs & Co., of Washington, of which firm George W. Riggs, the receiver, and John Elliott, the defendant in this action, were members. The firm of Riggs & Co. paid full market value for the bonds, and thereafter took them to the treasury of the United States and surrendered them to the treasury department, and, subsequently, other and new bonds were issued in their place, to the firm of Riggs & Co., and thereafter and in the month of December, 1875, the firm of Riggs & Co. sold the re-issued bonds in the market, and the same parted from out of their possession and were dispersed among the purchasers thereof. Appeals having been taken from the decrees sustaining the demurrer and directing the receiver to deliver the funds over to the defendants, the General Term of the Supreme Court of the District of Columbia, on the 4th day of March, 1876, made a degree reversing the judgments or decrees of the 24th day of June, 1875, and of the 28th day of June, 1875, and ordered that the cause be remanded to the Special Term, with leave to the defendants to answer the complainant's bill. The defendants in that action having answered, the court, on the 5th day of May, 1876, made a further order requiring the defendants in that action to pay into court the sum of $49,297.50 in gold, and, subsequently the defendants in that action were adjudged

guilty of a contempt in having failed to obey such order, and, as punishment therefore, their answer was stricken out and removed from the files of the court; thereafter, and on the 12th day of February, 1878, the court made an order that the bill of complaint of the plaintiffs in that action be taken *pro confesso* against the defendants, and on the seventeenth day of April thereafter, a decree absolute was made, in which it was adjudged and decreed that the defendants, McDonald and White, pay to the complainants the sum of $49,297.50 in gold, and that the complainants have a lien upon the claim of Augustin R. McDonald against the United States, as awarded by the mixed commission on British and American claims, and upon any draft, money, evidence of debt or the proceeds thereof, with legal interest from that day.

The first question which it becomes necessary for us to determine is as to the nature of the remedy or the kinds of relief that the plaintiffs have against the defendants. In considering this question, we shall assume that the lien of the plaintiffs extended to the bonds in the hands of Riggs & Co., that the firm having purchased them *pendente lite*, with knowledge of the fact that they were the subject of the litigation. We shall assume further that the original bonds having been surrendered to the Treasury Department and new ones issued in the place thereof, that the lien of the plaintiffs extended to such re-issued bonds. The referee has found as a fact that they were non-negotiable. It is, therefore, possible that the plaintiffs could follow the bonds into the hands of purchasers in good faith without notice of the lien and still maintain their lien. But the plaintiffs, having sold them in open market, to strangers, it would doubtless, be difficult, if not impossible, to trace them, and the lien must, therefore, be deemed as practically terminated or destroyed. The firm of Riggs & Co. sold the bonds in market, for full value, and received the money therefor. That firm was the owner of the bonds, but held them subject to the lien of the plaintiffs, and having practically destroyed the lien by making it difficult or impossible for the plaintiffs to pursue the bonds farther, must be held liable to the plaintiffs, in some form.

In this action the plaintiffs seek relief in equity. In their complaint they allege that they had no knowledge of the purchase of the bonds by Riggs & Co. until the 17th day of June, 1878. Aside from the statute of limitations, we shall not question the right of the plaintiffs to maintain this action although it is now apparent that no equitable relief can be granted; for the rule doubtless is, that where a party, in good faith, without knowledge of the happening of the event which renders equitable relief no longer possible, brings his action for such relief, equity will retain jurisdiction and award him the damages he may be entitled to. But if he brings an action for equitable relief with knowledge of the facts that such relief is no longer possible, the complaint will ordinarily be dismissed and he will be remitted to his remedy at law. (*Hatch* v. *Cobb*, 4 John. Ch. 559; *Kempshall* v. *Stone*, 5 id. 193; *Morss* v. *Elmendorf*, 11 Paige, 287.)

If, therefore, the plaintiffs brought the action in good faith, believing that the bonds were in the possession of Riggs & Co., without knowledge of the fact that they had been sold and disposed of, a court of equity may properly retain jurisdiction of their action to award them such relief as they are entitled to. But what relief can they have? The bonds are gone and can be no longer reached. Prior to the sale of the bonds, Riggs & Co. were under no obligation to the plaintiffs and no judgment *in personam* could be recovered against them. They held the bonds subject to the lien. But after the sale the relations of the parties was changed. The bonds were converted into money and Riggs & Co. held the money, in the place of the bonds, and, having the money, must account to the plaintiffs for the value of their lien. But the lien covered only a portion of the bonds. It did not cover their entire value, and, consequently, only a portion of the money received upon the sale could be claimed by the plaintiffs. But this portion cannot be separated or identified from the rest of the money, so that we cannot determine that the lien attached to any particular part or portion of the money received; and it does not appear that it has ever been kept separate and distinct

from other moneys, so that any particular fund or money can be proceeded against *in rem.* We must, therefore, treat it as money had and received, for which Riggs & Co. are liable to account to the plaintiffs for the value of their lien. It consequently appears to us that the only relief that could be given would be a money judgment for the amount of the lien. Might not this relief have been obtained by an action at law? The defendants had an interest in the bonds as owners. The plaintiffs had an interest in them as lienors. Both parties were interested. They were not tenants in common or joint owners and yet their relations after the sale were in some respects similar to a case where one joint owner had disposed of the entire property and had received the proceeds thereof. It may have been disposed of under circumstances which would constitute a conversion, or it may have been disposed of under circumstances in which the seller recognized the joint ownership, and received the proceeds as the agent or trustee of such joint owner. In either case, the joint owner had the right to treat the sale as made for his benefit and on his account and recover in an action of assumpsit the amount of his interest. Riggs & Co. sold the bonds in the open market to strangers, for full value, under circumstances making it difficult, if not impossible, to further trace them. The plaintiffs' lien was thereby made unavailable and was in effect destroyed. Riggs & Co., having received the full value, must be deemed to have received the plaintiffs' interest and to hold it for and on their account. It might be called a constructive trust or perhaps it would be more accurately described as analogous to a trust in which the law implied a promise to pay, and an action in assumpsit would lie therefor as for money had and received. (*Pierson* v. *Mc Curdy*, 33 Hun, 520; affirmed, 100 N. Y. 608; 3 Pomeroy Eq. Jurs., § 1234.)

It is also contended that the transfer of the bonds destroyed the plaintiffs' lien, and that an action on the case for such destruction could be maintained. ( *Yates* v. *Joyce*, 11 Johns. 136; *Lane* v. *Hitchcock*, 14 id. 213; *Van Pelt* v. *McGraw*, 4 N. Y. 110; *Manning* v. *Monaghan*, 23 id. 539; *Hale*

v. *Omaha Nat. Bank,* 49 id. 626; 64 id. 555; *Husted* v. *Ingraham,* 75 id. 259.)

· But we do not care to consider this question, for, under our views of the case, it becomes unimportant. Our conclusions are that, if an action in equity can be maintained at all, it can be only for a money judgment to the amount of the plaintiffs' claim, and that an action at law may be maintained for the same relief, and that the remedies are concurrent.

Prior to the adoption of the Code of Procedure it was provided by the Revised Statutes that " whenever there is a concurrent jurisdiction in courts of common law and in courts of equity, of any cause of action, the provisions of this title limiting a time for the commencement of a suit for such cause of action in a court of common law shall apply to all suits hereafter to be brought for the same cause in the court of chancery." (2 R. S., 301.)

· The adoption of the Code did away with this provision of the statute, but it was not intended to change the law in this respect. The court of chancery has been abolished, and it was not necessary to continue this section in the Code, for the provisions of the Code were so framed as to include all actions not excepted, and prescribed uniform rules declaratory of the time within which they might be brought. And the limitations of actions in equity follow that prescribed in actions at law of concurrent jurisdiction where the remedy at law is complete and effectual. (*Pierson* v. *McCurdy, supra; Butler* v. *Johnson,* 111 N. Y. 204.)

The trial court and the General Term appear to have reached the conclusion that the plaintiffs' lien was property and that the sale of the bonds in the market was a destruction of the plaintiffs' lien, and that it constituted an injury to property within the meaning of subdivision 3 of section 382 of the Code. We do not consider or question these conclusions, for if we are right in the view which we have taken, that there was an implied promise to pay, and that an action in assumpsit would lie thereon, the case would be controlled by subdivision 1 of section 382, which prescribes a limitation of six years in

an action upon a contract, obligation or liability, expressed or implied, except a judgment or sealed instrument. There is no no pretence that this case is brought within the exceptions mentioned. It consequently remains to be determined as to when the statute commenced to run. Ordinarily an action for money had and received, accrues as soon as the defendant has received the money. It is contended, however, that in this case no cause of action accrued to the plaintiffs until they obtained their decree in their action against McDonald and White in the Supreme Court of the District of Columbia, which was on the 17th day of April, 1878; but we do not understand that the plaintiffs' lien was created by the decree in that action. It was created by the contract which the plaintiffs made with McDonald to prosecute his claim before the commission, and has existed ever since by virtue of that contract. When the money was paid over to the receiver, to be invested in bonds, the lien was, by the contract and agreement of the parties, transferred to such bonds. The decree of the court adjudged and determined that there was such a contract and lien existing. It was not necessary for the plaintiffs to delay the bringing of this action until that action was determined. They were at liberty to prosecute the defendants immediately upon their disposing of the bonds. All the facts in reference to the making of the contract, the obtaining of the award, the existence of the lien, could have been shown in this action as well as in that. It is possible that the plaintiffs would have been prejudiced by the decrees entered upon the sustaining of the demurrer during the time that those decrees were in force, unreversed. But those decrees were reversed on the 4th day of March, 1876, more than eight years before the commencement of this action. The plaintiffs claim that they did not know of the sale; but ignorance of the fact that they had a cause of action against the defendants does not prevent the running of the statute in cases of this character. The provisions of subdivision 5 of the section of the Code under consideration, have no application to actions brought upon implied contracts to pay.

We are, consequently, of the opinion that the statute of limitations had run at the time this action was brought, and that the judgment should be affirmed, with costs.

All concur with BRADLEY, J., except FOLLETT, Ch. J., HAIGHT and BROWN, JJ., dissenting.

Judgment reversed.