The National City Bank of New York, Plaintiff, *v.* Bon Ray Dance Frocks, Inc., Defendant.

Municipal Court of New York, Borough of Manhattan, Third District, November 15, 1934.

*Harold H. Keefe,* for the plaintiff.

*Harold Kohn,* for the defendant.

Lewis, David C., J.   The defendant, as the employer, hired one Louis J. Neidenberg as a salesman on a commission basis pursuant to the terms of a written contract, which expressly stipulated: " During your employment with us, we will allow you a drawing account of $35 a week while you are on the road.   This drawing account is simply a loan to you in order to meet your current expenses and is under no circumstances a salary.

" When making up monthly accounts, any loans which we made to you by way of drawing account shall first be paid back to us out of any commissions coming to you.   We want you to understand that if you owe us money, you will not get any commissions until these commissions are first applied to what you owe us, and then you get the difference.   We desire it to be clearly understood that your compensation is only the commissions which you earn and not any drawing account which we give you in addition to the commissions.

" If you leave our employ for any reason whatsoever and you owe us for money which we advanced to you by way of drawing account, you agree to pay back to us immediately on demand any balance which you owe us, representing the difference between the drawing account advanced by us and the commissions earned by you."

The contract further stipulates that the employment is from week to week and either party can end the agreement at any time on three days' notice; and that commissions shall stop when the employment ceases.

The plaintiff duly procured a judgment against the said employee Neidenberg and a garnishee order and execution was duly issued and served on the defendant, the employer.

It is not disputed that subsequent to the service of the garnishee upon the defendant, Neidenberg earned commissions in excess of the twelve dollars per week, which were apparently applied by the defendant in satisfaction of the advances made by the defendant to Neidenberg.

If the garnishee constituted a valid and continuing lien upon the commissions earned by Neidenberg, superior to the claims of this defendant under the employment contract, then the plaintiff is entitled to judgment.

Upon the application before me, both sides count on the contract. The plaintiff rests its case upon the undisputed amounts of the commissions that Neidenberg earned under the contract subsequent to the service of the garnishee, while the defendant looks with confidence to the ruling that weekly advances by an employer to the judgment debtor employee under the designation of loans to be repaid by the employee do not constitute earnings and are not subject to attachment by garnishee. (See *Franklin Simon & Co.* v. *Pease & Elliman*, 238 App. Div. 614.)

Undoubtedly the agreement has been modeled on the precedent cited. But the facts presented in the two cases are not identical.

In the *Franklin Simon* case there were practically no commissions earned by the employee after the garnishee had been served on the employer. In the instant case sufficient sums were earned by the employee to satisfy the garnishee execution.

As a matter of fact, the defendant does not dispute that during this time Neidenberg actually worked for the defendant, and that he actually earned commissions. But as a matter of law the defendant denies the right of the plaintiff to attach these commissions, because the contract of employment provided that the weekly loans advanced by the employer should be repaid out of the commissions earned by the employee.

I cannot entirely subscribe to the defendant's theory. For while the sums the defendant advanced to its employee could be moneys loaned, the commissions accruing on the sales made by the employee must be moneys earned. A court of law familiar with their identity wears a strained countenance when it is asked to look upon these commissions and not recognize them as earnings.

" Knowing so much, the officers of the corporation who made these payments also must have known what their effect would be. If the gods did not actually frown, their faces were at least inscrutable." (*Dalziel* v. *Rosenfeld*, 265 N. Y. 76, 80.)

In the course of a legal battle, one may wrestle with problems of law but shadow-boxing has no place in the judicial arena.

Satisfied that the commissions due the employee constituted earnings, the court then faces the query, were they subject to this garnishee? At the time that the original contract was made, these earnings had no existence either in fact or law. They were potentialities or possibilities. But as such they were the subject of assignment.

" Future profits, earnings, or wages under an existing contract are generally assignable except in so far as such assignments are forbidden by statute, and such an assignment will prevail over subsequent garnishment, provided, of course, all prerequisites of a valid assignment are complied with." (28 C. J. p. 105, § 142, and authorities listed.)

While in law there may be a transfer of commissions even before they are earned, the right or title to such future earnings does not necessarily pass before they are earned.

There is a distinction between the assignment of earnings or income under a contract of employment not then in existence — and such an assignment of earnings under a contract then in existence. (*Matter of Black*, 138 App. Div. 562, 564.)

" There was indeed no present, actual, potential existence of the thing to which the assignment or grant related, and, therefore it could not and did not operate *eo instanti*, to pass the claim which was expected thereafter to accrue to Bell against the corporation; but it did, nevertheless create an equity, which would seize upon these claims as they should arise, and would continue so to operate, until the object of the agreement was accomplished. * * * Whatever doubts may have existed heretofore on this subject, the better opinion, I think, now is, that courts of equity will support assignments, not only of choses in action, but of contingent interests and expectations, and of things which have no present actual existence, but rest in possibility only, provided the agreements are fairly entered into, and it would not be against public policy to uphold them." (*Field* v. *City of New York*, 6 N. Y. 179, 186, 187.)

A court of equity " ' does not hold that a conveyance of that which does not exist operates as a present transfer in equity any more than it does in law. But it construes the instrument as operating by way of present contract, to give a lien which, as between the parties, takes effect and attaches to the subject of it as soon as it comes

into the ownership of the party. Such we deem the rule to be in equity in this State.' * * * It is the general rule in equity, which prevails, so far as I know, in all jurisdictions that follow the common law, that between two conflicting equitable interests or liens, other things being equal, the one that is prior in time is superior in right." (*Central Trust Co.* v. *West India Imp. Co.*, 169 N. Y. 314, 323.)

An instrument considered as an assignment will not (at law) pass a title to chattels not in existence, or not in the ownership of the grantor, or not sufficiently appropriate at the time of the assignment. (2 Hilliard Mtgs. p. 408, § 4; from *McCaffery* v. *Woodin*, 65 N. Y. 461.)

Conceding the assignability of the future commissions that Neidenberg might earn under this contract of employment, where is the proof of such an assignment?

At this stage of the action, the only evidence before the court is the contract. Does the letter of employment contain any assignment by the employee to his employer of commissions to be earned?

The expectant examiner is disappointed at the absence of those familiar words, " assign, transfer, grant, set over," or of any equivalent, to indicate that the employee has parted with his right or title to future earnings. Nor do we find any agency or power of attorney expressly set forth in the document.

To the contra, the most that can be spelled from the letter itself is an understanding that the loans are to be paid back and that the commissions are to be applied to the advances. " Any loans * * * shall first be paid back to us out of any commissions coming to you. * * * You will not get any commissions until these commissions are first applied to what you owe us, and then you get the difference." But the absence of these words is not fatal, for any language, however informal, if it shows the intention of the owner to transfer the property therein to the assignee, will be sufficient. (See 5 C. J. 906.) However, if the letter lacks the language of assignment in law, can the defendant maintain its claim on the theory that its inchoate right to these future earnings had become vested?

" It would have been otherwise if the contract had contained an assignment of the claim of the plaintiffs. That might have furnished a right of action at law, if the claim may be said to have had a potential existence at the time it was made. (*Jones* v. *Mayor, etc.*, 90 N. Y. 387.) And as held in *McCaffrey* v. *Woodin* (*supra*) and *Gregory* v. *Morris* (96 U. S. 619), when with the equitable lien is given the right to take the property, the exercise of such right perfects the lien, and enables the party to assert it as a defense or

in support of an action founded upon the right resulting from the execution of such power, and is supported by the lien." (*Hovey* v. *Elliott*, 118 N. Y. 124, 136, 137.)

The commissions could not be appropriated (applied) until they ripened into existence. And before this occurred, the garnishee execution was duly served.

And in *Hovey* v. *Elliott* (*supra*) we find that the instrument creating the claim expressly made it a lien upon the fund.

Here again the general principles of law instruct us: " In any case where there has been an irrevocable appropriation by defendant to a particular purpose, the doctrine that property previously transferred or assigned ceases to be defendant's property for the purpose of garnishment comes into play.

" The test as to whether such an appropriation has been made is whether an adverse interest in the subject matter is thereby vested in the depositary or in third persons." (28 C. J. pp. 106, 107, § 144, notes 40, 47, 48.)

Further examination into the law cautions the court against a conclusive determination based entirely on the letter or the language of the contract.

" The form of words used in making the agreement is not alone to receive attention, but all the circumstances of the transaction are to be considered. It is a rule in equity that any thing which shows an intention to assign on the one side and from which an assent to receive may be inferred on the other will operate as an assignment if sustained by a sufficient consideration." (*Williams* v. *Ingersoll*, 89 N. Y. 508, 521.)

The case last cited (*Williams* v. *Ingersoll*) also lays down the following rule: " Whatever the law may be elsewhere, it must be regarded as the settled law of this State that an agreement, either by parol or in writing, to pay a debt out of a designated fund, does not give an equitable lien upon the fund or operate as an equitable assignment thereof." (See p. 518.) And if I may quote further from the said authority, it reads: " The agreement was not alone that the plaintiffs should be paid out of any sum recovered. Such an agreement, as I have shown, would not have been sufficient to give the plaintiffs any claim upon the award. But there was also proof tending to show that it was the intention to assign to the plaintiffs or to give them a lien upon any sum recovered and that plaintiffs were to receive the sum recovered and retain out of it their compensation, and to pay the balance if any, to Heath. "

This same principle is set forth in another case.

" In all cases, therefore, in which a particular fund to accrue in future is designated in the draft and the language is ambiguous, the

turning point is whether it was the intention of the parties that the payment should be made only out of the designated fund, when or as it should accrue, or whether the direction to the drawee to pay was intended to be absolute, and the fund was mentioned only as a source of reimbursement, or an instruction as to book-keeping." (*Brill* v. *Tuttle*, 81 N. Y. 454, 457, 458.)

And so the court turns again from the decisions to the document, mindful that the text is not the sole test. That silent intent may be voiced by the surrounding circumstances. It is in this light we must read the meaning of the contract. And to this end the court inquires how were these respective items of advances and commissions treated and carried on the books of the defendant? How were they regarded by the parties? What course did they travel? Did the amount of commissions earned by the employee at any time exceed the amount of moneys theretofore advanced by the employer? These and other queries may play a pertinent part in the answer to the problem before the court. Mute affidavits in such a situation are no substitution for a live trial.

It may not be out of order to also note that in bankruptcy the courts may disregard, if not destroy, such an assignment of future earnings. This result follows their ruling on the effect of a discharge. A discharge in bankruptcy cancels a provable debt; it leaves nothing unpaid; and unless the debt is revived, the discharge spells the end of the obligation.

One cannot quarrel with that holding. (*Matter of Home Discount Co.*, 147 Fed. 538; *Matter of Karns*, 148 id. 143; *Matter of West*, 128 id. 205.)

Motion for summary judgment is, therefore, denied.