## OKIN v. ISAAC GOLDMAN CO.

### No. 490.

Circuit Court of Appeals, Second Circuit.

Aug. 8, 1935.

**318**

Charles Seligson, of New York City (Samuel Wasserman and Bernard Bayer,

both of New York City, of counsel), for appellant.

Nathan B. Fogelson, of New York City (Irving N. Selkin, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The first cause of action, which is the only one involved on this appeal, was brought by the plaintiff as trustee in bankruptcy of Quality Publications, Inc., to recover sums of money aggregating $7,-023.60 from the defendant Isaac Goldman Company. The payments were alleged to be voidable preferential transfers made within four months of the filing of the petition on January 7, 1932, and the suit was in terms founded upon section 60b of the Bankruptcy Act, 11 USCA § 96 (b). The payments made were as follows: $1,889.98 on September 23, 1931; $1,500 on September 29, 1931; $1,500 on October 28, 1931; $1,760.32 on November 11, 1931; and $373.30 on November 30, 1931.

Before Quality Publications, Inc., became bankrupt, it published a magazine called "The Thinker." The defendant printed the periodical under a written contract with the publisher, and Cohen, the president of the latter, guaranteed the defendant's account. Between the autumn of 1930 and April, 1931, Quality had become indebted to the defendant to the amount of $9,436.64, no part of which had been paid, and the latter naturally was dissatisfied with conditions. To give its creditor security for present and future indebtedness, Quality executed an assignment on April 7, 1931, of all moneys due and to become due to the defendant from the American News Company, which was the distributor of The Thinker, under a written contract with Quality. Between April 8, and July 8, 1931, the defendant printed and supplied materials for the May, June, and July issues of the magazines, resulting in a further indebtedness of $8,289.02 therefor. On July 8, 1931, Quality made a further assignment to the defendant of all moneys due and to become due from Public News Company, which had become the distributor of its magazine in succession to the American News Company. Each of the two assignments gave the defendant pow-

er for the latter's own interest to collect all of the moneys assigned thereby, either in its own name or in that of Quality Publications, Inc., and the second assignment mentioned recited that the Public News Company should withhold from Quality sufficient moneys to cover the amount of the defendant's invoices rendered to Quality plus the sum of $1,000 per month to be applied on the past indebtedness of the latter to defendant. The contract between Quality and the Public News Company provided that the first issue to be distributed by it was for September, 1931. Between July 9, 1931, and January 7, 1932, when the petition in bankruptcy was filed, the defendant received the payments aggregating $7,023.60, which the trustee in bankruptcy seeks to recover, as follows: From American News Company, $1,500 on September 29, 1931, $1,500 on October 28, 1931, and $373.30 on November 30, 1931; from Public News Company, $1,889.98 on September 23, 1931, and $1,760.32 on November 11, 1931.

The amounts defendant received from the American News Company were to cover credits it had advanced to the plaintiff for printing the magazine. The magazines were distributed to the American News Company prior to September 7, 1931, or more than four months before the filing of the petition in bankruptcy, and charged to American News Company on its books as and when delivered at 15 cents per copy with a credit of 15 cents for each copy that was not sold. Thus the defendant held an assignment of plaintiff's accounts with the American News Company, covering the issues of May, June, and July, which arose prior to September 7, 1931, although the payments in question were not received until after. The amounts defendant received from the Public News Company represented the current credits the defendant had advanced in connection with the September and October issues of The Thinker.

■ The question as to both the payments by the American News Company and by the Public News Company is whether the assignments to the defendant of the accounts against them were valid as against a trustee in bankruptcy, who has the rights of an attaching creditor. This depends on the state law, in this case the law of New York. Finance & Guaranty Co. v. Oppenhimer, 276 U. S. 10, 12, 48 S. Ct. 209, 72 L. Ed. 443; Benedict v. Ratner, 268 U. S. 353, 359, 45 S. Ct. 566, 69 L. Ed. 691; Hiscock v. Varick Bank of N. Y., 206 U. S. 28, 27 S. Ct. 681, 51 L. Ed. 945; Thompson v. Fairbanks, 196 U. S. 516, 522, 25 S. Ct. 306, 49 L. Ed. 577; Dooley v. Pease, 180 U. S. 126, 21 S. Ct. 329, 45 L. Ed. 457.

■ Under the New York law an agreement that payment shall be made out of a fund when it comes into existence creates an equitable lien valid against a trustee in bankruptcy unless the fund arises within four months prior to the filing of the petition. Archibald v. Panagoulopoulos, 233 N. Y. 478, 489, 135 N. E. 857. Such was assumed in Benedict v. Ratner, 268 U. S. 353, 359, 361, 45 S. Ct. 566, 69 L. Ed. 691, to be the New York law, although the decision turned on the question whether a genuine and unrestricted assignment had been made. It is the general rule in New York that such a lien takes effect when the future chose in action becomes the property of the promisor. Central Trust Co. v. West India Imp. Co., 169 N. Y. 314, 323, 62 N. E. 387. Compare Barnes v. Alexander, 232 U. S. 117, 34 S. Ct. 276, 58 L. Ed. 530.

■ This rule, however, does not apply as against a trustee in bankruptcy or execution creditor to either personal chattels or to choses in action when they are subject to sale or use by the assignor in his business. Benedict v. Ratner, 268 U. S. 353, 45 S. Ct. 566, 69 L. Ed. 691; Zartman v. First Nat. Bank, 189 N. Y. 267, 82 N. E. 127, 12 L. R. A. (N. S.) 1083; New York Security & Trust Co. v. Saratoga Gas & Electric L. Co., 159 N. Y. 137, 53 N. E. 758, 45 L. R. A. 132; Rochester Distilling Co. v. Rasey, 142 N. Y. 570, 37 N. E. 632, 40 Am. St. Rep. 635; Prudential Ins. Co. v. Liberdar Holding Corp. (C. C. A.) 74 F.(2d) 50. In such cases the courts either hold the arrangement fraudulent or at any rate ineffective until something is done by the assignee to perfect his lien.

■ In our decision of In re Modell, 71 F.(2d) 148, there is some language of Judge Swan relating to assignments of choses in action which had not come into being when the assignments were made which may be thought to modify what we have stated to be the New York rule, but in that decision the assignment which purported to cover the right, title, and in-

terest of the assignor in any "judgment or proceeds thereof" which the latter might recover in a pending action for malicious prosecution did not operate upon the judgment until within the four months' period, for only within that period was the judgment entered. Prior to that time it could not affect a nonassignable cause of action to recover damages for a personal tort. Williams v. Ingersoll, 89 N. Y. 508, 519. The equitable lien involved in the Modell decision was plainly preferential because arising within the four months' period.

In Irving Trust Co. v. Commercial Factors Corp., 68 F.(2d) 864, we held that a mortgage on after-acquired chattels, while creating an equitable lien on property when it comes into existence as against simple creditors or purchasers with notice, under the New York law would not prevail against the legal lien of an attaching or execution creditor or a trustee in bankruptcy. This decision only affected tangible property capable of reduction to manual possession and not choses in action. In Corney v. Saltzman (C. C. A.) 22 F.(2d) 268, an agreement was executed prior to the four months' period and the mortgage within that period. It was held that the giving of the mortgage was a preferential transfer and the familiar distinction was made between an agreement purporting to give an absolute present right and one to create such a right in the future. It seems to have no direct bearing on the present situation. The Circuit Court of Appeals for the Sixth Circuit in Union Trust Co. v. Bulkeley, 150 F. 510, at page 516, held that a parol assignment of an account and bills receivable to be acquired in the course of business by the assignor, given in order to furnish security, though relating to after-acquired property, created a valid lien upon the property, the court saying: "When acquired, it would become subject to the lien without any new or further agreement. This is something quite different from an executory contract." This seems to be the law of England as enunciated by the House of Lords in Tailby v. The Official Receiver, L. R. 13 A. C. 523. Union Trust Co. v. Bulkeley, supra, was decided by a court consisting of Lurton, Severens, and Richards, C. JJ., and, while dealing specifically with the common law of Michigan, in our opinion sets forth the common law

of New York as well as England, in relation to the time when liens created by an assignment of after-acquired accounts will take effect. It seems particularly pertinent because of its statement that they will take effect when the accounts are acquired by the bankrupt "without any new or further agreement."

In view of the foregoing, the payments to the defendant by the American News Company, in our opinion, created no preference irrespective of whether or not they were upon an antecedent indebtedness to the latter or in liquidation of advances made after April 8, 1931, when the assignment was executed. This is because all of the accounts covered by the assignment arose outside of the four months' period. Sexton v. Kessler & Co., 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995; Voltz v. Treadway & Marlatt, 59 F.(2d) 643 (C. C. A. 6); Goldstein v. Rusch, 56 F.(2d) 10 (C. C. A. 2); Union Trust Co. v. Bulkeley (C. C. A.) 150 F. 510.

The assignment of the account against the Public News Company and the payments to the defendant thereunder created no unlawful preference, but for a different reason. The assignment, while made on July 8, 1931, which was prior to the four months' period, covered payments of $1,889.98 on September 30, for the September issue, and $1,760.32 on November 11, for the October issue. While the accounts against the Public News Company for the September issue may in whole or in part have arisen prior to the four months' period, the account for the October issue certainly arose within that period. These considerations, however, cannot affect the result or render the payments preferential. So far as they were made from accounts which arose prior to the four months' period, the lien was perfected outside of that period and cannot be attacked by the trustee for the reasons we have given in respect to the account against the American News Company. So far as they were made from accounts which arose within the period, they were in liquidation of security given by the bankrupt to obtain future advances of credit from the defendant. As we have already stated, the lien took effect when the accounts against Public News Company came into being. The advances, when made, furnished a present consideration for the imposition of the liens. The decision of In re Bernard & Katz, Inc.

(C. C. A.) 38 F.(2d) 40, 43, had to do with such a situation. There Swan, J., remarked:

"When the parties agree in good faith that a lien presently created shall stand as security for future advances, and such advances are thereafter actually made in good faith before the bankruptcy of the borrower, we see no reason to deny effect to the agreement. * * * The future advance, when made, becomes a present consideration; it increases the borrower's assets by as much as the enlargement of the lien decreases them."

In re Locust Bldg. Co. (C. C. A.) 299 F. 756, 769, is to the same effect. Although the accounts against the Public News Company were not in existence when the assignment was made, as was the security in Re Bernard & Katz, supra, there was no depletion of the estate caused by the payment, inasmuch as it was given in exchange for the magazines printed at the cost of the defendant and furnished to Quality Publications, Inc., at the same time when the assignment actually took effect. Indeed, the account of Public News Company was but a substitute for the magazine. Accordingly, the fact that the payment was made during the four months' period can make no difference, because it was derived from the accounts which were a present consideration for the delivery of the magazine.

■ While the first cause of action was to recover under section 60b of the Bankruptcy Act, 11 USCA § 96 (b), it seems to be argued that recovery of the same sums might be had under section 70e, 11 USCA § 110 (e) by reason of section 15 of the New York Stock Corporation Law (Consol. Laws N. Y. c. 59). We find no reason to suppose that the first cause of action was tried on this theory, but, in any event, the evidence was insufficient to support a recovery under section 15. The bankrupt continued in business for nine months after the assignment of the account against the American News Company was made and six months after the assignment of the account against the Public News Company. The defendant had some concern about the bankrupt's indebtedness and its default in the payment of two notes. It required the assignments in order to obtain security if it was to continue to print the magazine. There is no proof that it had any further knowledge of the bankrupt's financial condition, and it continued to advance credit during the period prior to the filing of the petition so that the bankrupt then owed it some $3,000 more than in April, 1931, when the first assignment was made. We think such facts did not give the defendant reasonable cause to believe that the giving of security would effect a preference even if the bankrupt be thought to have had such an intent. Therefore section 15 did not apply.

We think it clear for the foregoing reasons that there were no preferential payments, and the judgment is accordingly reversed.