**RUDNICK et al. v. FISHBECK.**

No. 75, Docket 20343.

Circuit Court of Appeals, Second Circuit.

Dec. 10, 1946.

Writ of Certiorari Denied April 7, 1947.

SWAN, Circuit Judge, dissenting.

On November 30, 1942, an involuntary petition in bankruptcy was filed against Certified Oil Company, Inc., and it was adjudicated a bankrupt. Appellants filed a proof of claim as assignees of a claim of Natural Petroleum Corporation under an assignment dated July 28, 1943, purporting to have been executed and acknowledged in New York by one Rodman as president

and on behalf of Natural.[1] Objections to the claim were filed by appellee, a creditor of Certified. The Referee, by an order of September 28, 1944, expunged the claim because of lack of consideration for the assignment. On petition for review, the district judge, by an order of May 4, 1943, reversed the Referee's order and remanded, directing a rehearing in order to obtain "an informative record"; the judge, noting that the assignment was made after the commencement of the bankruptcy proceedings, called attention to the question of compliance with General Order No. 21(3), 11 U.S.C.A. following section 53.[2] On remand, the Referee conducted further hearings. In connection therewith the following occurred: On September 14, 1945, the appellant Rudnick filed an affidavit stating that he had requested the necessary affidavit from Rodman, and also from Rubin, who was vice-president of Natural Petroleum after 1942, but that both Rodman and Rubin had refused these requests. On October 2, 1945, Rodman filed an affidavit in opposition to the claim which said: "I was the president of the Natural Petroleum Corporation on July 28, 1943, the date of the alleged assignment from said corpora-

tion to George J. Rudnick, Harry Rice and myself, of any and all claims which said corporation had against the bankrupt herein. At the outset, I should like to point out that in addition to myself there were two other officers of Natural Petroleum Corporation, that is, Mr. Rubin and Mr. D. Stettner. I have read the affidavit of George J. Rudnick, sworn to by him on September 12, 1945,[2a] in which he allegedly reports a telephone conversation that he had with me during the course of which he requested me to give an affidavit for the purpose of complying with the requirements of General Order 21(3) which I refused. Mr. Rudnick's report of the conversation is not accurate. I admit that I did refuse to furnish the affidavit, but not for the reasons assigned by Rudnick. I refused to furnish such affidavit since I insisted that there was no claim of any kind which Natural Petroleum Corporation had against the bankrupt; there was no claim that could be assigned; there was no consideration for the assignment; no consideration of any kind was passed or paid by the three assignees for such assignment; Rudnick, an attorney-at-law, had never rendered any services for Natural Petroleum Corpora-

---

[1] This assignment read in part as follows:

"Know All Men by These Presents, that Natural Petroleum Corporation, hereinafter referred to as the Assignor, a corporation organized and existing under and by virtue of the laws of the State of New York, for and in consideration of the sum of $1.00 to it paid, receipt whereof is herewith acknowledged, and for other good and valuable consideration received by it from George J. Rudnick, of 215 Montague Street, Brooklyn, New York, Harry Rice, of 1004 Montgomery Street, Brooklyn, New York, and Robert Rodman, of 25 Linford Road, Great Neck, Long Island, hereinafter referred to as the Assignees, hereby sells, assigns and transfers to the said Assignees any and all claims, choses and causes of action, and accounts, on the part of the Assignor against Certified Oil Co., Inc., Marge Coreao and Frank Coreao * * *

State of New York ⎱
City of New York ⎰ ss:
County of Kings

On the 28th day of July, 1943, before me came Robert Rodman, to me known,

who, being by me duly sworn, did depose and say that he resides at 25 Linford Road, Great Neck, Long Island; that he is the President of Natural Petroleum Corporation, the corporation described in, and which executed, the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation; and that he signed his name thereto by like order."

[2] General Order 21, subdivision (3) provides that:

"If a claim has been assigned after the commencement of the proceedings but before proof of claim has been filed, the proof of claim therefor shall be supported by an affidavit of the owner at the time of the commencement of proceedings, setting forth the true consideration for the debt, what payments have been made thereon, and that it is entirely unsecured, or if secured, the security as is required in proving secured claims * * *."

[2a] This affidavit was filed on September 14, 1945.

tion nor had parted with anything of any value which could be claimed as consideration for the assignment; Rice never parted with any consideration for such assignment. I also repeated to Rudnick, incidentally of all of which he is fully aware, that the only reason I executed the assignment in behalf of Natural Petroleum Corporation was because of the threats made and because of the duress employed by Rudnick. Prior to the making of the alleged assignment Rudnick threatened that unless I signed the paper, the stock of Natural Petroleum Corporation, which was being held by Rice, as a dummy for another person, would never be returned to Natural. Hence, the assignment was void from its very inception. The foregoing are the reasons which I gave Rudnick for my refusal to make the affidavit. I repeat all of them now. Moreover, I do not recall any single word uttered by me during the course of my testimony which can in any way be claimed by Rudnick as proof that there was any merit at any time to the claim filed by him. I reiterate that there is not. I should like to point out that at the time of the alleged assignment, there were three officers of Natural Petroleum Corporation, Mr. Rubin, Mr. Stettner and myself. While Rudnick claims to have requested Rubin and myself to furnish him with an affidavit in order to comply with General Order 21(3), his affidavit is strongly silent as to any attempts made by him to obtain an affidavit from Mr. Stettner, the third officer. In conclusion, I respectfully submit that there is no merit to the claim of Rudnick and Rice and that it should, therefore, be expunged." By an order of November 14, 1945, the referee once more expunged the claim on the grounds that Natural had not, by corporate action, authorized the assignment, that Natural had not received consideration for the assignment and that there was no compliance with G.O. 21(3). On petition for review, the judge heard further testimony. At this time, Rodman testified that Rubin, while still an officer of Natural at the time of the assignment, had had nothing at all to do with the transaction. Rodman also testified that he did not know whether Stettner resigned before or after the assignment took place, but that in any event, by 1943, Stettner had nothing to do with the affairs of Natural. Rubin had previously testified that Stettner had stated in June, 1942, that he had just resigned from Natural.

By an order of December 18, 1945, the district judge affirmed the Referee's order of November 14, 1945.

George J. Rudnick, pro se.

Herman G. Robbins, of Brooklyn, N. Y., for Harry Rice.

Safir & Kahn, of New York City, for bankrupt-appellee.

David Sklaire, of New York City, for Harold F. Fishbeck.

Before SWAN, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

The record is largely unintelligible, and we shall therefore not attempt to go into the facts in detail. As neither the Referee nor the judge dealt with the merits of Natural's claim against the bankrupt, we shall not consider them.

The assignment needed no consideration; see New York Personal Property Law, § 33, subdivision 4.[3] The more troublesome question is whether there was compliance with G.O. 21(3). Rodman's affidavit of October 2, 1945 stated his reasons for refusing to execute the affidavit which had been requested by appellants in order to comply with the Order. Rodman's affidavit fulfills the requirements of the Order in so far as they relate to consideration; for, where an assignment requires no consideration, a statement that none existed is enough. Rodman's affidavit does not detail the amount of the claims, whether or not they are secured, and whether or not any payments have been made. However, it is apparent that the claimant-appellants

---

[3] This statute, as it stood in 1943, read as follows: "An assignment hereafter made shall not be denied the effect of irrevocably transferring the assignor's rights because of the absence of consideration, if such assignment is in writing and signed by the assignor."

could not, by the exercise of due diligence, have procured an affidavit which complied with G.O. 21(3) in these respects. The failure to ask Stettner for one was reasonable in the light of Rodman's testimony; Stettner was probably not an officer at the time of the assignment; and even if he had been, his affidavit would have served no useful purpose since he knew nothing of the assignment, and the reason for requiring such a sworn statement from the assignor is that presumably he is better acquainted with the pertinent facts than the assignee. The proof of claim filed November 10, 1943, contained all the information required under the General Order, and there is no suggestion that the debtor and its creditors have been prejudiced by the absence of any data in Rodman's affidavit.

■ Aware that, literally, the language of the Order is mandatory, we are not prepared to say what our decision would be if the claimants had been unable to obtain any affidavit whatever from the assignor. For here they did obtain one, and it contains the most important element, i.e., the necessary information about the consideration. In the circumstances, on familar equitable grounds, full literal compliance with the General Order must be excused.

■ As there was an absence of corporate action by Natural authorizing the assignment, appellee asserts that it was invalid. Rodman, however, testified before the judge that, when he executed it, he was Natural's sole stockholder. He had previously testified before the referee that (at some time which he did not indicate precisely) there had been another stockholder. The judge made no finding on that issue of fact. It is suggested that, even if he had found it in favor of appellants, they could not win because (1) their pleadings were not based on a disregard of the corporate fiction, and (2) in any event, they had the burden of proof. But a proof of claim is hardly a pleading, and in any event the formal proof of claim seems adequate as a statement of ultimate facts. And the testimony as to Rodman's sole ownership of all the stock when the assignment was made

might well have justified a conclusion in favor of its validity. The course of the proceeding below was such, however, as to obscure this issue so that it was not only not adjudicated, but apparently not thoroughly canvassed. We think that in the interests of justice the case should be remanded for a complete trial of this issue, with the parties at liberty to present additional evidence if they see fit.[4] This will enable the referee below to make adequate findings of fact, as well as the appropriate final adjudication.

Appellee asserts that the assignment was invalid under New York Penal Law, § 274 because one of the assignees was a lawyer. While we incline to believe that, on the facts now before us, this statute is here inapplicable, this issue, which was not considered below, should also be considered, after a further hearing, on the remand.

Should the right to file the claim be decided in favor of appellants, of course all defenses, of every kind, on the merits will be open.

Reversed and remanded.

SWAN, Circuit Judge (dissenting).

I think the order expunging the claim should be affirmed on the ground that Rodman, who executed the purported assignment as president of Natural, had no authority to act on the corporation's behalf. It is true that consideration is unnecessary to validate an assignment "In writing and signed by the assignor." N. Y. Personal Property Law, § 33, subd. 4. But the assignment upon which the appellants based their claim was not signed by the assignor but by one who purported to act as an agent of the assignor. To establish their right as assignees the appellants had to prove that the agent possessed authority, either actual or apparent, to act on behalf of his principal. Rodman testified that he had no actual authority to execute the assignment and that the only consideration given by the assignees was the delivery by Rice to Rodman personally of shares of stock which Rodman wanted in order to enable him to put through a reorganization of Natural.

---

4 Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221.

Assuming that there was a valid debt owed by the bankrupt to Natural, Rodman as president of Natural had neither actual nor apparent authority to give away this corporate asset or to sell if for his own advantage.

Because the record leaves it uncertain whether Rodman was the sole stockholder of Natural at the date of the assignment, and whether at that date Natural had creditors who might be defrauded by the assignment of the claim to the appellants, my brothers think the cause should be remanded for findings on those subjects. The appellants never presented their case on the theory that the corporate entity should be disregarded, and the debt owed by the bankrupt treated as a debt owed to Rodman personally which he assigned as principal. Had they made allegations to that effect they would have lost the case for failure to carry the burden of proving them. When there is a ground (lack of authority in Rodman to assign Natural's claim) adequate to sustain the judgment on the issues presented by the pleadings and proof, I see no good reason for this court to make over the case and send it back for trial on a theory neither alleged nor proved by the appellants.