**William H. SCARBOROUGH, Trustee in Bankruptcy of Comet Manufacturing Corporation, Bankrupt, Plaintiff,**

v.

**BERKSHIRE FINE SPINNING AS-SOCIATES, Inc., Defendant.**

United States District Court,
S. D. New York.

Feb. 10, 1955.

Otterbourg, Steindler, Houston & Rosen, New York City, for plaintiff. Frederic P. Houston, Marks F. Paskes, Aaron Rosen, New York City, of counsel.

Robinson & Henson, New York City, for defendant. Francis C. Leffler, J. Arthur Bowen, New York City, of counsel.

DAWSON, District Judge.

This is a motion for summary judgment made by the defendant. The action is brought by a trustee in bankruptcy to recover from the defendant $94,660.89 as a preference.

The following facts seem to be substantially without dispute:

1.  The amount of $94,660.89 was received by defendant as the purchase price for cloth which defendant sold to the bankrupt to be manufactured into handkerchiefs for sale by the bankrupt to the Army under a contract which the bankrupt had with the United States Government.

2.  The bankrupt, whose place of business is in North Carolina, placed the order for the cloth with the defendant in February, 1952. Up to that time, defendant had never done any business with bankrupt, and defendant apparently was concerned about the credit standing of the bankrupt. The bankrupt referred defendant to William Iselin & Co., Inc. of New York, N. Y. who, bankrupt stated, had factored bankrupt's accounts since August, 1950. William Iselin & Co., Inc. had filed, under the North Carolina statute[1], on November 27, 1950, a notice of assignment of accounts receivable, effective for a five-year period, running from the Comet Manufacturing Corp. to itself.

3.  As a result of discussions between the bankrupt, the defendant, and William Iselin & Co., Inc., four agreements were entered into as follows:

(a)  An agreement dated March 10, 1952 between the defendant and the bankrupt, reciting that William Iselin & Co., Inc. had agreed to act as fiscal agent in connection with the government contract, and that the bankrupt agreed to assign the government contract to William Iselin & Co., Inc., with irrevocable instructions to pay 80% of the proceeds to the defendant, and the defendant agreed to ship to the bankrupt the piece goods to be manufactured by the bankrupt into handkerchiefs;

(b)  An assignment dated the same day whereby the bankrupt assigned the government contract to William Iselin &

---

1.  Chap. 44, Art. 14, Sec. 44–78, North Carolina General Statutes, C. 196, Laws 1945.

Co., Inc. with irrevocable instructions to pay 80% of the proceeds to the defendant;

(c) An agreement by William Iselin & Co., Inc. dated March 12, 1952 to pay over to defendant 80% of the proceeds of the government contract in accordance with the terms of the assignment.

(d) A conditional sales contract dated March 20, 1952 under which the defendant agreed to deliver certain handkerchief lawn to the bankrupt, title to all goods to remain in the seller until such time as they were manufactured into handkerchiefs, accepted by and invoiced by the purchaser (the bankrupt) to the United States Government in accordance with the terms of the United States government contract that was the subject of the assignment referred to above in subdivisions (a) (b) and (c).

4. Between March 11, 1952 and March 14, 1952, William Iselin & Co., Inc. filed a written notice of the assignment and a copy of the assignment with the New York Quartermaster Procurement Agency, the government agency involved.

5. Thereafter, cloth was shipped by defendant to bankrupt, manufactured into handkerchiefs by the bankrupt, and the handkerchiefs delivered to the Army. Invoices were rendered and William Iselin & Co., Inc. received from the United States Government a total of $118,322.88 in full payment of the shipments by the bankrupt. William Iselin & Co., Inc. then paid 80% of this amount, or $94,660.89, to defendant. It is this amount which the trustee seeks to recover in this action.

6. The involuntary petition against the bankrupt was filed on August 15, 1952. All of the payments received by the defendant were received by it in the four months previous to this date.

The plaintiff, as trustee in bankruptcy of the bankrupt, claims that the amounts received by the defendant during this four-months period constituted preferential payments, and has brought an action for their recovery.

The defendant asserts as an affirmative defense that defendant was a secured creditor under a perfected lien granted by the bankrupt prior to four months before the filing of the petition. Defendant's position is that since the assignment of the government contract to the factor had been made on March 10, 1952 and the factor had coincidentally therewith agreed with the defendant that 80% of the proceeds would be paid to the defendant, the defendant had, prior to the four-months period, secured a lien upon 80% of the proceeds of the government contract, as security for the cloth which it would deliver to bankrupt.

The issues raised by the plaintiff are, in substance, as follows:

1. No assignment of accounts receivable under the government contract was given to the defendant as security. At most, defendant is the beneficiary of irrevocable instructions from the bankrupt to the factor to pay a portion of the proceeds of the government contract to defendant when, as, and if, received.

2. Defendant failed under the Federal Law, relating to assignments of claims against the government, to perfect any lien on accounts receivable.

3. Federal Law prohibited defendant, which is neither a bank, trust company, nor other financing institution, from obtaining an assignment of any accounts payable by the government.

4. If defendant was the beneficiary of an assignment of bankrupt's accounts receivable, defendant failed to perfect any lien with respect thereto under the applicable North Carolina Law.

All of these issues overlook the fact that defendant did not receive anything from the bankrupt. The amounts which it received were received by it from William Iselin & Co., Inc. If William Iselin & Co., Inc. had a secured lien on the accounts receivable of the bankrupt, then the fact that it paid over part of the proceeds to defendant would not make them any the less protected by the secured lien.

The plaintiff does not contest that as to William Iselin & Co., Inc. there was a valid assignment by bankrupt of the proceeds arising out of a government contract and that this assignment had been properly filed under the Federal Assignment of Claims Act[2] with the government agency involved, the New York Quartermaster Procurement Agency, and that this assignment was perfected by a filing under the North Carolina assignment of accounts receivable statute.[3] That this is so would appear to be clear.

The Federal Assignment of Claims Act[4] states that monies due or to become due from the United States or from any agency or department thereof under a contract providing for payments aggregating $1,000 or more may be assigned to a bank, trust company, or other financing institution provided that, unless expressly permitted by such contract, any assignment shall cover all amounts payable under such contract and shall not be made to more than one party nor subject to further assignment, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing. The legislative history of the Federal Assignment of Claims Act shows that a factor is a financing agent within the meaning of the word as used in the Act. U.S.Code Cong. & Adm. Serv., 82d Cong. 1951, Vol. 2, p. 1414, at p. 1419.[5] Therefore, under the Act William Iselin & Co., Inc., as a factor, was a proper party to whom an assignment could be made.

■ William Iselin & Co., Inc. properly filed its assignment with the government agency involved in accordance with the provisions of the Act. At that time, more than four months prior to the bankruptcy, William Iselin & Co., Inc., as to itself, had so far perfected its assignment with respect to its obligation to file under the Federal Assignment of Claims Act, that it could not be attacked by the trustee in bankruptcy.[6]

■ The defendant did not file an assignment of a claim against the government so as to perfect a lien of the account receivable, for it was not under an obligation to do so, nor indeed could it, for not being a bank, trust company, or other financing institution, it was not a party to whom such an assignment could run. However, it was not foreclosed from participating in the assignment as a party for whom William Iselin & Co., Inc. acted as either a trustee or agent. Accord, In re Italian Cook Oil Corp., 3 Cir., 1951, 190 F.2d 994. It was a party participating in the financing in that it was providing an asset to the bankrupt, i. e., the cloth to be manufactured into the handkerchiefs.

■ There was, therefore, only one further step to be taken by William Iselin & Co., Inc. to perfect a legal lien which would withstand the attack of the trustee in bankruptcy, and that was to comply with Sections 60, sub. a(6), (7), and (8) of the Bankruptcy Act[7] which set forth the requirements for perfecting a legal lien, in accordance with the statutes of the respective states, here either New York or North Carolina.

New York does not require that the assignment of a mere account receivable be filed in order to perfect a legal lien. See New York Personal Property Law, McK. Consol.Laws, c. 41, Article 3.

2. 31 U.S.C.A. § 203.

3. Chap. 44, Art. 14, Sec. 44–80, North Carolina General Statutes, C. 196, Laws 1945.

4. 31 U.S.C.A. § 203.

5. Letter from the Comptroller General of the United States to the Honorable Burnett R. Maybank, Chairman, Committee on Banking and Currency, U. S. Senate, dated March 15, 1951: " * * *

Inasmuch as factoring companies have heretofore been considered as 'financing institutions' to whom assignments could be made under the Assignment of Claims Act of 1940, it would appear that they should be brought within the scope of the present bill." U.S.Code Cong. & Adm. Service 1951, at page 1420.

6. Cf. In re Webber Motor Co., D.C.N.J. 1943, 52 F.Supp. 742.

7. 11 U.S.C.A. § 96, sub. a (6, 7, 8).

952

New York Courts hold that an assignment of the right to receive the proceeds of an existing contract is a present transfer and all rights thereunder run from the day of the assignment so as to give the assignee thereunder rights superior to those of a trustee in bankruptcy. Rockmore v. Lehman, 2 Cir., 1942, 129 F. 2d 892, certiorari denied, 1943, 317 U.S. 700, 63 S.Ct. 525, 87 L.Ed. 559, reversing on rehearing, 2 Cir., 1942, 128 F.2d 564.

The law of North Carolina [8] provides two alternative methods of perfecting an assignment of an account receivable, a filing of a notice of assignment, or notice to the debtor, both of which were complied with in the instant situation by William Iselin & Co., Inc. more than four months prior to the bankruptcy.

■ When such an assignment has been perfected, it precludes from consideration as preferences payments or collections on account made during the four-months period immediately preceding the bankruptcy. Hughes v. Lawyers Trust Co., 2 Cir., 1940, 108 F.2d 792, certiorari denied 310 U.S. 647, 60 S.Ct. 1097, 84 L.Ed. 1413; 3 Collier on Bankruptcy, p. 962, 14th Ed.; North Carolina General Statutes, § 44–80, supra.

All available means of perfecting a legal lien under the Federal Assignment of Claims Act and the laws of New York or North Carolina were taken by William Iselin & Co., Inc. with respect to the assignment that ran to it from the bankrupt.

The Federal Assignment of Claims Act did not require that defendant take any steps to perfect its interest as a party participating in a financing. Therefore, unless defendant was under an obligation under the laws of either New York or North Carolina to do something additional with respect to the agreements that ran to it, its receipt of funds from William Iselin & Co., Inc. was not a preference.

■ It is apparent from the papers before me that Berkshire is no more than the third-party beneficiary of a contract made in compliance with the Federal Assignment of Claims Act. There is no doubt that as to Iselin, Berkshire had an enforceable right to the extent of 80% of the proceeds of the assigned contract when received by Iselin from the government.[9] As to himself, the complaining trustee has not set forth in his papers any provision in the North Carolina statutes which require that such a contract be filed so as to create, in the absence thereof, a voidable preference under the Bankruptcy Act, nor has research found one. Neither is such the situation under the law of New York.[10]

8. "§ 44–80. Protected assignments.—(1) An assignment becomes protected:
"(a) At the time of the filing of a notice of assignment contemporaneously with, or subsequently to, such assignment, or
"(b) At the time of the filing of the notice of assignment, as to an assignment made after the filing of the notice of assignment, if the assignment is taken within the period specified in the notice of assignment or in any extension statement or on or before the date specified in the notice of discontinuance of assignment, or
"(c) If no notice of assignment is on file in accordance with the provisions of § 44–78, then upon the giving of written notice to the debtor that the account has been assigned to the named assignee.
"(2) When an assignment becomes protected, it shall be deemed to have been fully perfected at that time, and no bona fide purchaser from the assignor, no creditor of any kind of the assignor, and no other assignee or transferee of the assignor, in any event shall have, or be deemed to have, acquired any right in the account so transferred or in the proceeds thereof, or in any obligation substituted therefor, superior to the rights of the protected assignee therein.
"(3) As between protected assignees the one who first protects his assignment has the superior right. (1945, c. 196, s. 4.)"

9. Filardo v. Foley Bros., 1948, 297 N.Y. 217, 78 N.E.2d 480, reversed on other grounds, 1949, 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed. 680; Crumpler v. Hines, 1917, 174 N.C. 283, 93 S.E. 780.

10. Archibald v. Panagoulopoulos, 1922, 233 N.Y. 478, 135 N.E. 857; See Okin v. Isaac Goldman Co., 2 Cir., 1935, 79 F.2d 317.

It is clear that Berkshire, being dubious of the bankrupt's financial condition, sought to protect itself fully against the economic collapse that eventually befell the bankrupt. It therefore sought to retain at all times effective economic and legal control of all advances to the bankrupt. It took steps to retain title, under its conditional sales contract, to the cloth that it delivered to bankrupt up through the manufacturing process until delivery to and acceptance by the government. It was only at this point that title passed and from that moment on, it was fully protected as a third-party beneficiary under the perfected assignment that had been filed by William Iselin & Co., Inc.

The trustee bases his argument upon the contention that the parties understood and agreed that the factor was to act and did act as the agent of the bankrupt. Even if this were so, it would not change the nature of the transaction as set forth in the agreements of the parties. It is true that a mere communication or mandate to the agent of a debtor directing him to pay a fund, or a portion of a fund, to a designated person will not operate as an assignment, but may be withdrawn or revoked at any time before the arrangement is completed. Here, however, the entire transaction was completed and the picture must be looked at as a whole—the conditional sales contract, the assignment of the government contract with irrevocable instructions and the subsequent shipment of the cloth. It is quite evident that, as I said before, the intent of the parties was that Berkshire should not lose control of either the merchandise or its equivalent in cash under the government contract. If the bankrupt failed to complete the contract, Berkshire could repossess the cloth. Once the contract was completed and accepted, a right to 80% of the proceeds arose in Berkshire's favor.

It would appear that a trust was impressed in favor of Berkshire to the extent of 80% of the proceeds payable to William Iselin & Co., Inc. It may be argued also that an equitable lien in favor of Berkshire within the framework of the legal assignment to William Iselin & Co., Inc. is implied from the circumstances of the transaction and recognized because Berkshire was a purchaser for value. Barnes v. Alexander, 232 U. S. 117, 34 S.Ct. 276, 58 L.Ed. 530; In re Interborough Consolidated Corporation, 2 Cir., 1943, 288 F. 334, 344, 32 A. L.R. 932, certiorari denied Porges v. Sheffield, 262 U.S. 752, 43 S.Ct. 700, 67 L.Ed. 1215. However, regardless of which theory is used, it is clear that they reach the same result.

After consideration of all of the facts and the papers, I make the following conclusions of law:

(1) That William Iselin & Co., Inc. was a secured creditor;

(2) That the defendant was a third-party beneficiary of the assignment from the bankrupt to William Iselin & Co., Inc.

(3) That the transfer to the defendant was not a preferential transfer;

(4) That defendant's motion for summary judgment should be granted.

Settle order on notice.