Bernard J. MALONE, as Trustee in Bankruptcy of Little Falls Dairy Company, Inc., Plaintiff,

v.

Moe BOLSTEIN and David Gimpel, Defendants.

Civ. No. 5187.

United States District Court
N. D. New York.

June 30, 1956.

Affirmed March 28, 1957.

See 244 F.2d 954.

James A. McTiernan, Little Falls, N. Y., for plaintiff.

Bartle Gorman, Utica, N. Y., for defendants.

BRENNAN, Chief Judge.

This action involves the determination of the existence of a preference under the provisions of the Bankruptcy Act in the matter of the payment of $8,050 to the two defendants within a period of four months prior to an adjudication in bankruptcy. The facts are undisputed. They are set out below in narrative form.

On Jan. 29, 1951 the Little Falls Dairy Co., Inc. (hereinafter referred to as "Little Falls" or the "bankrupt") entered into a written agreement with Gimpel Farms Inc. whereby Little Falls agreed to sell and deliver to Gimpel Farms, who agreed to purchase, four tanks of milk weekly consisting of not less than 350 cans of milk per tank, commencing Mar. 1, 1951 and terminating on Feb. 28, 1952. Gimpel Farms Inc. agreed to make payment for the milk so delivered weekly following receipt of bill from the seller. The sales agreement granted to Gimpel Farms the option of renewing the contract for an additional period of one year from the expiration date thereof.

On the same date, the defendants entered into a written agreement to loan to Little Falls the sum of $30,000 to be repaid at the rate of $1,000 per month, commencing Apr. 1, 1951 with interest at the rate of 7½% per annum.

On Feb. 20, 1952 the sales agreement between Little Falls and Gimpel Farms Inc. was extended an additional year in accordance with the option contained in the original agreement.

On July 24, 1951 an additional writing termed an "agreement" was executed by Little Falls and the two individual defendants. The body of the document is set out below.

"Now, Therefore, it is agreed by and between the parties hereto, as follows:

"1. That the said agreement dated January 29th, 1951 be deemed modified by the addition of the following provisions:

"It is further understood and agreed that in the event of failure to

deliver milk from Little Falls Dairy Co. Inc. as per contract at any time it is then agreed that Gimpel Farms, Inc. is then authorized to pay to David Gimpel and Moe Bolstein any and all debts and claims owing to them by Little Falls Dairy Co., Inc. and remit the balance, if any, to Little Falls Dairy Co., Inc.; to the extent of such payment to David Gimpel and Moe Bolstein, the said account is assigned to David Gimpel and Moe Bolstein.

"In all other respects the said agreement dated the 29th day of January, 1951 shall be deemed in full force and effect."

As far as the record discloses, the obligations of all parties under the agreements were performed in accordance with their terms until Jan. 25, 1953 when Little Falls failed to deliver milk to Gimpel Farms Inc. in accordance with the original sales agreement. On that date Gimpel Farms was indebted to Little Falls for milk delivered in an amount somewhat in excess of $8,050. At the same time Little Falls was indebted to Messrs. Bolstein and Gimpel on account of the loan agreement, above referred to, in an amount of $8,050. On Jan. 28, 1953 Gimpel Farms Inc. paid to the defendant Bolstein $4,025 and a like sum to defendant Gimpel. Such payments were made under the provisions of the agreement of Jan. 24, 1951, which is set forth above.

Little Falls filed a petition under Chapter 11 of the Bankruptcy Act, 11 U.S. C.A. § 701 et seq. in the Clerk's office of this district on Feb. 16, 1953. The plan submitted failed and Little Falls was adjudicated a bankrupt on Apr. 22, 1953. A trustee was thereafter appointed who brings this action against the individual defendants to recover from each the sum of $4,025. The action proceeds upon the theory that the payments, above referred to, were made within a period of four months prior to bankruptcy and constitute a preference under the provisions of Sec. 60 of the Bankruptcy Act, 11 U.S.C. § 96.

The only additional relevant fact, which should be added, is that at all of the times pertinent here, the individual defendants were officers and directors of Gimpel Farms Inc. This fact accounts for the knowledge that Gimpel Farms had of the existence of the agreement of July 24, 1951. The record is otherwise entirely silent as to any formal notification of such agreement given to Gimpel Farms.

■ The above facts are readily understood and there is no problem in connection therewith. The construction and application of the agreement of July 24, 1951 is actually the crux of this litigation. No question is raised but what the problem here is to be solved under the provisions of New York State law as construed and applied in New York State court decisions. Manchester Nat. Bank v. Roche, 1 Cir., 186 F.2d 827; In re Barnett, 2 Cir., 124 F.2d 1005, at page 1008, Okin v. Isaac Goldman Co., 2 Cir., 79 F. 2d 317.

Before attempting any discussion of the law which must be applied, it seems logical to consider and interpret the agreement of July 24, 1951. It is plain that the primary purpose of the agreement is to afford the individual defendants additional security to insure the repayment of the moneys advanced under the January 1951 loan agreement.

It is equally plain that the language of the instrument makes it an adjunct to the sales agreement of Jan. 29, 1951. It in no way purports to stand alone and unsupported. Its language contains words of present agreement and present transfer. Nothing remains to be done by either of the parties to the agreement by the terms thereof. True, it contemplates the performance by Little Falls of an independent, entirely separate bilateral contract and the authority to make the payment comes into existence only in the event of a breach of such separate contract.

In summary, I construe the instrument as an agreement made July 24, 1951 assigning that part of the credit account of

Little Falls with Gimpel Farms in an amount necessary to repay the two defendants the balance of the moneys advanced under the loan agreement. Authority to pay same to the two defendants is withheld until Little Falls is in default in their sales contract.

■ The plaintiff argues that the instrument contains no present agreement because of the use of the words " * * * it is then agreed * * * " in referring to Little Falls' failure to deliver milk. It is my opinion that the words quoted do not nullify the remaining express language of a present assignment but must be construed as fixing the time when Gimpel Farms is authorized to make payment of an account presently assigned. It is a well recognized rule of construction that effect should be given to all provisions of an instrument whenever possible. See also Sexton .v. Kessler & Co., 225 U.S. 90, at pages 96–97, 32 S.Ct. 657, 56 L.Ed. 995.

■ The plaintiff also contends that the agreement is invalid for any purpose. Reliance is based upon the decision In Matter of Kienle's Estate, 202 Misc. 396, 109 N.Y.S.2d 496, affirmed 280 App.Div. 975, 117 N.Y.S.2d 467. The decision in that case was based on two holdings. First, the writing was interpreted to be simply a promise to pay a debt out of a designated fund. Second, the agreement was not supported by a legal consideration. Section 33 of the Personal Property Law of the State of New York, McK.Consol.Laws, c. 41 eliminates the application of the second reason from the instant case, Rudnick v. Fishbeck, 2 Cir., 158 F.2d 940, and my interpretation of the contract in the instant case eliminates the first basis for the decision. The instrument created " * * * a mere possibility coupled with no interest". Hinkle Iron Co. v. Kohn, 229 N.Y. 179, at page 182, 128 N.E. 113, at page 114. I would conclude that the case cited is not an authority here.

■ I must confess a confusion on my part in an independent investigation of New York State law as applicable to the validity of and the interest, if any, granted in the agreement under discussion. No .single decision has been cited or found which is an authority for the solution of the problem here. Many cases have been examined but the analysis thereof is an onerous task which may better be left for more authoritative decision. New York State law upon the subject under discussion has been stated by federal judges in at least three decisions, viz: In re New York, New Haven & Hartford R. Co., D.C.1938, 25 F.Supp. 874; Rockmore v. Lehman, 2 Cir., 1942, 129 F.2d 892; Scarborough v. Berkshire Fine Spinning Associates, D.C.1955, 128 F.Supp. 948. The conclusion in the three decisions may be summed up by the language of Judge Dawson in the Scarborough case, 128 F.Supp. at page 952. "New York Courts hold that an assignment of the right to receive the proceeds of an existing contract is a present transfer and all rights thereunder run from the day of the assignment so as to give the assignee thereunder rights superior to those of a trustee in bankruptcy".

■ Before discussing the above cases, an appreciation of certain fundamentals may well be shown. No specific or particular words are required to constitute an assignment. The intention of the parties is an important element. Fischer v. Liberty Nat. Bank & Trust Co., D.C., 53 F.2d 856, National City Bank of New York v. Bon Ray Dance Frocks, Inc., 153 Misc. 549, at page 553, 275 N.Y.S. 510. Dominion over the thing or right assigned must be relinquished by the assignor in order to constitute a valid assignment. Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L. Ed. 991. A mere promise to pay out of a designated fund to come into existence is unenforceable as an assignment. See cases cited In Matter of Kienle's Estate, supra. New York State law does not require filing or the notification of a third party holding the thing or right assigned in order to perfect a legal assignment. N.Y.Personal Property Law § 41.

Referring now to the three decisions, mentioned above, the case of In re New York, New Haven & Hartford R. Co., supra, is first considered. A reading of

that decision shows that the problem is on all fours with that involved in the instant case. There, as here, the assignment was to secure advancements. It was in part conditional. It involved a future right in the sense that it was expected to mature in the future under a contract already in existence. It was subject to the event of a default upon the underlying principal obligation. It was a transfer of a partial, as distinguished from a complete, right. The decision is cited with approval in both the dissenting opinion of Judge Clark in the Rockmore case as reported in 2 Cir., 128 F.2d 564 and in the subsequent decision in which Judge Clark's opinion was in general adopted, 2 Cir., 129 F.2d 892, so that I conclude that there is no decision which in any way overrides or modifies Judge Hinck's conclusion.

The case of Rockmore v. Lehman, supra, holds that the assignment of contracts to secure advances created liens good at law against installment payments to become due in the future under the terms of the contract.

The plaintiff distinguishes that decision from the instant problem by use of the argument that the contract involved therein was actually assigned while in the instant case, it is the proceeds of the contract which is attempted to be made the subject of the assignment. The contention is without basis. An examination of the actual instrument of assignment to Abrams in the Rockmore case, as it appears in 128 F.2d at pages 564 and 566, shows that the transfer to Abrams was a transfer of the account exactly as in the New York, New Haven & Hartford case and as in the instant case. It appears to be correct that in the Rockmore case, the assignment to Lehman included the entire underlying contract but I conclude that all that the Rockmore decision requires to invoke the rule expressed therein, is that a definite contractual obligation be assigned as distinguished from the moneys to be earned thereunder. Here there was a definite contractual obligation by Gimpel Farms to pay to Little Falls for all milk delivered to it, including milk which had been delivered prior to the default, the purchase price of which was unpaid at that time. If I am right in my interpretation of the agreement here, a part of that definite contractual obligation was assigned to the defendant. Judge Hand places emphasis upon the fact that the preference section of the Bankruptcy Act does not apply in the Rockmore case because a contractual obligation is assigned and not merely the moneys accruing or to become due thereunder. Plaintiff's argument goes back to an interpretation of the instrument of July 1951 and the interpretation made herein forecloses the validity of his contentions that the Rockmore decision does not apply.

The reading of the three opinions in the Rockmore case makes it clear that an assignment of definite contract rights, future only in the sense that they are conditioned upon the performance which the promisee has promised is a present transfer and not a mere promise to pay out of future funds. See dissenting opinion 128 F.2d at pages 564 and 567.

In Scarborough v. Berkshire Fine Spinning Associates, supra, the Rockmore v. Lehman case, supra, is cited as an authority so that although not urged, it may be assumed that plaintiff would contend that the decision is not controlling for the same reasons advanced by him with reference to the Rockmore decision. Whether or not the facts justify the contention is unnecessary to decide. It is apparent that in the Scarborough case contractual rights were assigned which gave to the assignee the right to receive the proceeds of an existing contract although such proceeds were to be earned in the future under the terms of such contract. I have interpreted the present agreement as assigning a contractual right so that the contention is rejected as indicated in the discussion of a similar contention advanced as to the Rockmore decision.

At page 952 of 128 F.Supp. of the Scarborough decision, it is stated in plain language that when an assignment has been perfected, it precludes from

consideration as preferences payments or collections on account made during the four month period immediately preceding bankruptcy. The case of Hughes v. Lawyers Trust Co., 2 Cir., 108 F.2d 792 is cited as authority. See also In re Ace Fruit & Produce Co., D.C., 49 F.Supp. 986, at page 989. There is no contention here that the lien, created by the assignment, if valid, was not perfected as of the date it came into being.

█ The three decisions, above referred to, dictate the conclusion that under New York State law, an assignment of a contractual obligation, which is part of an existing contract, is a present transfer as of the date of the assignment and payments made thereunder within the four month period, prior to bankruptcy, may not be considered as preferential payments by a bankrupt which the trustee is entitled to recover. New York cases, which justify the conclusion are for the most part referred to in decisions cited herein.

For the reasons above indicated, it is concluded that the defendants are entitled to a judgment dismissing the complaint herein, and it is

So ordered.