Edward J. Greenfield, J.
In the never-ending contest between debtor and creditor where relentless pursuit and ingenious evasion vie for mastery, the annals of the income execution loom large. Among the most vexatious of the problems is the never-ending question of what pigeonhole the salesman’s drawing account against commissions fits in. Is it really wage income or is it a bona fide loan by the employer? In our commercial society this type of arrangement has become increasingly common, with remuneration keyed to results while outlay is geared to daily necessities.
This case involves such a problem. The controversy, between a judgment creditor and the employer of the judgment debtor, is submitted on stipulated facts:
*670 The plaintiff in this action had previously recovered a judgment against Theodore S. Keehn, the judgment debtor, on April 27, 1959, in the Municipal Court in the amount of $357.11. The judgment was duly entered.
Thereafter Keehn was employed by defendant as a real estate salesman. Under the terms of employment, he was to receive advances against commissions to be earned. The agreement provided: 11 Any sums paid to, advanced to or drawn by the Employee in excess of the commissions actually due him shall be deemed ordinary debts due from the Employee to the Employer upon demand. ’ ’
The judgment debtor was drawing $90 a week from the defendant when, on February 14, 1962, plaintiff served a garnishee execution pursuant to the order directing defendant to deduct 10% of Keehn’s earnings until the sum of $484.06 (covering judgment, interest, and poundage) was paid. Prior to that date defendant had advanced to Keehn $3,110 in excess of his earned commissions.
After service of the garnishee order defendant continued to make advances to the judgment debtor, crediting such commissions as were earned against the total of advances outstanding, without deducting anything therefrom for the benefit of plaintiff. In fact, defendant increased the debtor’s rate of advance drawings from $90 to $140 a week starting December 7, 1962. At no time did the total commissions earned by Keehn equal or exceed the aggregate of defendant’s advances to him, even though over $7,000 in commissions was credited to his account since the service of the garnishee execution. By October, 1965, defendant had advanced to the judgment debtor $9,218.94 more than the commissions he had earned.
Plaintiff commenced this action against defendant for its failure to make the required deductions from the judgment debtor’s earnings as called for in the garnishee order. Defendant contends that such deduction could be made only from sums due and owing the debtor, and since its advances to him always exceeded his earnings, it was entitled to apply his commissions to repay itself, so that at no time did it owe the judgment debtor anything.
Both CPLR 5231 (subd. [e]), the income execution section, and section 684 of the Civil Practice Act, its predecessor which was in effect when the defendant was first served, require the employer to withhold up to 10% of sums which are due and owing or may thereafter become due and owing to the judgment debtor. Since there was always a question as to the exact status of *671 advances against commissions, subdivision 7 of section 684 of the Civil Practice Act (added by L. 1926, ch. 618) explicitly provided that garnishment was applicable to commissions and drawing accounts. (See Goodrich Rubber Co. v. Yellow Taxi Corp., 154 Misc. 440; Davidow v. John Hancock Mut. Life Ins. Co., 231 App. Div. 300.) The latter provision was omitted from CPLR 5231 but no specific reference was made as to the omission in any of the Reports of the Advisory Committee on Practice and Procedure, which put forward the various drafts. There does not seem to be any intention to exclude such commissions and drawing accounts as actual wages from the operation of the now income execution provisions. It would appear that such an explicit provision was considered superfluous since drawing accounts would be adequately covered by the general language of CPLR 5231 (subd. [c]) referring to “money then or thereafter due ’ ’.
Despite the statute the reported cases have continued to distinguish between bona fide employer advances and subterfuges to conceal actual wage payments. Thus, after the passage of subdivision 7 of section 684 of the Civil Practice Act, it was nevertheless held that where there was a genuine obligation requiring the employee to repay advances, the fact that an account was overdrawn meant that no money was due, that the employer had made bona fide loans, and that such advances would be exempt from any attempt to execute thereon. (Franklin Simon & Co. v. Pease & Elliman, 238 App. Div. 614.) In the absence of a clear-cut agreement spelling out a definitive requirement of repayment, the employer was held obliged to honor the garnishment and pay a percentage of its advances. (Rosenberg v. Parlay Hats, 144 Misc. 519; Laird v. Carton, 196 N. Y. 169.)
In National City Bank of N. Y. v. Bon Ray Dance Frocks (153 Misc. 549) it was observed that in the Franklin Simon case (supra) virtually no commissions were earned after the service of the garnishee order and the court there distinguished between garnishment on advances as moneys earned, and garnishment on commissions earned. "While indicating that the claim prior in time should prevail, the court found questions of fact had been raised precluding summary judgment. In President & Directors of Manhattan Co. v. Washington Haberdasheries (163 Misc. 66) it was held that to the extent commissions were actually earned after levy of execution, the creditor was entitled to 10% despite the employer’s continuing advances to the judgment debtor,
*672 It would appear therefore that where “ advances ” are merely another form of wages, the income execution should fasten upon the weekly or monthly sum made available to the employee, regardless of the terms used to describe it. Even where there is a genuine system of loans or advances by an employer, with a fixed obligation of repayment, the employer cannot blithely ignore a creditor’s claims against his salesman and continue to make further advances which will outpace the salesman’s earnings forever. Once he is on notice that there is a creditor with a ripened claim against his employee, if he chooses to make further advances he gets no privileged position for priority repayments merely because he is the employer. As a creditor, he must stand in line and wait his turn as the earlier debts are paid off first. Otherwise, if the employer continues to siphon water out of the well as fast as it flows in, there will never be an overflow to replenish the thirsting creditor waiting below.
In short, an employee is not to be immunized from income executions for all time by the device of having advances or drawings continually outpace commissions earned. It makes no difference how meticulous the contract between employer and employee may be drawn to require repayment. While business necessity may sometimes require the drawing account so that a salesman may continue to live until he has earned commissions, the salesman should not be insulated from creditor claims when ordinary wage earners are not.
The reported cases appear to recognize such a distinction although not as explicitly as they might. In the Franklin Simon case (supra) the execution did not attach because after it was served there were no further advances. That is not the case here.
In this case in September, 1962, when the garnishee execution was served, the debtor owed his employer on account of the prior advances the sum of $3,110. By December, 1963, he had earned over $4,300 in commissions, so that the employer could have been fully repaid for his pre-execution advances by that date. The employer continued to make advances thereafter, and indeed even increased the advances 40%. I hold that once the advances prior to execution were fully repaid, the employer was bound to honor that execution and apply 10% not of the weekly drawings, but of the employee’s actual earnings by way of commission thereafter until the execution was satisfied. On the basis of the figures presented, such 10% deductions would have totaled almost the amount of the levy by October, 1965. The other 90% of the accrued commissions the employer and employee were free to apply as they might agree between them *673 selves for repayment or for living expenses. Bnt the creditor’s patient wait can no longer be deferred. Accordingly, I find that plaintiff is entitled to judgment against the defendant in the sum of $482.67, with interest from October 31, 1965, and costs.