Murray T. Peiden, J.
This is an application by the judgment debtors, pursuant to CPLR 5231 (subd. [b]), to vacate an income execution.
*534 It is contended by the moving party that an income execution can issue only where the judgment debtor is receiving a net take-home pay of over $85 a week. The judgment creditor contends that the controlling amount is the gross salary rather than the net take-home pay. The judgment debtor alleges that she earns a gross weekly salary of $119.86, but that her take-home pay, after deducting withholding taxes, pension and health insurance payments, is $82.12 a week: This controversy is of first impression under CPLR 5231 (subd. [b]) and its importance is attested by the submission of an amicus curiae brief by the “ Commercial Lawyers Conference ” in opposition to the motion.
CPLR 5231 (subd. [b]), as amended and effective September 1, 1970, provides in part as follows: “ Where a judgment debtor is receiving or will receive more than eighty-five dollars per week from any person, an income execution for installments therefrom of not more than ten percent thereof, may be issued ”. (Emphasis supplied.) Prior to September 1, 1970, the amount was $30 per week.
The words “receiving” and “receive” in the above section are misleading and their use in the statute cannot be equated with their colloquial or dictionary meaning. To arrive at the legal meaning of these words it is necessary to refer to the history of income executions formerly known as garnishees.
The predecessor of the above statute, subdivision 1 of section 684 of the Civil Practice Act, provided in part: ‘1 where any wages * * * are due and owing to the judgment debtor or shall thereafter become due and owing to him, to the amount of thirty dollars or more per week * * * said execution shall become a lien and a continuing levy upon the wages * * * due or to become due to said judgment debtor to the amount specified therein which shall not exceed ten percentum thereof”. (Emphasis supplied.)
Under this section, gross salary rather than net take-home pay was the basis for determining the amount subject to income execution (State Tax Comm. v. Voges, 144 N. Y. S. 2d 193; Coller v. Sheffield Farms Co., 129 Misc. 600, 604; Matter of Royal Business Funds Corp. v. Rooster Plastics, 53 Misc 2d 181; 22 N. Y. Jur., Exemptions, p. 235). See also Morris Plan Ind. Bank of N. Y. v. Gunning (295 N. Y. 324, 331), which holds that the aforesaid Civil Practice Act in effect provided an exemption of 90% of the judgment debtor’s income.
*535 The case of County Trust Co. v. Duerr (52 Misc 2d 411), cited by the judgment debtor, is clearly distinguishable and inapplicable in that it involved a motion to modify an income execution pursuant to subdivision (g) of CPLR 5231 rather than as in the instant application under subdivision (b), to vacate an income execution. 'Subdivision (g) permits the court, in the interest of justice, and in its discretion, to reduce an income execution where there would be extreme hardship, taking into consideration the debtor’s requirements, his dependents, take-home pay and other relevant factors. An application under subdivision (b) does not permit the exercise of discretion (6 Weinstein-Korn-Miller, N. Y. Civ. Prac., pp. 52-566, 52-567; Spatz Furniture Corp. v. Lee Letter Serv., 54 Misc 2d 359).
The judgment debtor lays great stress on the “ Supplementary Practice Commentary” concerning the September 1, 1970 amendment, which is to be found at page 115 (2d par.) of the 1970-1971 Supplement to McKinney’s Consolidated Laws of New York (CPLR, Book 7B). This court disagrees with the conclusion reached therein. If one were to follow the Commentary’s reasoning that CPLR 5231 (subd. [b]) refers to net earnings, it would result in the anomaly that an individual with many dependents would have to pay more on an income execution than one with few dependents as the former would have the least amount withheld for taxes, thereby subjecting a greater portion of his earnings to an income execution. This certainly could not have been the intent of the Legislature. The Commentary goes so far as to state that the 10% income execution should only apply to net earnings in excess of the $85 take-home pay. Such abridgment of a creditor’s rights can only be spelled out by a clear legislative intent and mandate. The policy of the law is to assist rather than to make it more difficult for the judgment creditor (State Tax Comm. v. Bradley, 185 Misc. 733; Matter of Ostergren, 49 Misc 2d 894, 896).
This court’s conclusion is aptly expressed in Weinstein-KornMiller (vol. 6, N. Y. Civ. Prac., pp. 52-537-52-538) where the authors, in discussing CPLR 5231 (subd. [b]), state: “Since CPLR 5231 is designed to retain the prior practice by and large and there is no clear evidence of an intent to depart from former law in this particular respect, the computation probably should be made on the basis of the debtor’s gross earnings. Furthermore, a contrary conclusion would place a premium on a debtor’s ability to maximize his deductions and minimize his take-home pay.”
*536 Although it is stated in Weinstein-Korn-Miller that there is an absence of guidance from the Advisory Committee, this court finds an important guidepost in the Sixth Report to the Legislature (N. Y. Legis. Doc., 1962, No. 8, p. 493). It is there clearly indicated that CPLR 5231 is merely a resurrection of the old 10% garnishee execution and that the reference to amounts that the judgment debtor is “ receiving ” as used in CPLR 5231 (compared to the words “wages due and owing” in Civ. Prác. Act, § 684, subd. 1) was merely meant to make it clear that all amouunts received by a debtor, such as commissions, overtime, bonuses and other irregular income payments in addition to the ordinary wages, are subject to an income execution. Interpretation of the word ‘£ wages ’ ’ had previously vexed the courts (e.g., Larry Goldwater, Inc. v. Snyder Nat. Realty Co., 48 Misc 2d 669, 671; President & Directors of Manhattan Co. v. Washington Haberdasheries, 163 Misc. 66). The Sixth Report to the Legislature is at odds with the Commentary’s interpretation of the word “ receiving ”. It thus appears that the use of the word “ receiving ” was meant to increase the amount of earnings subject to income execution and not to decrease it, as suggested in the Commentary.
Having in mind that there is no evidence of an intent by the Legislature, in adopting CPLR 5231 (subd. [b]), to depart from the predecessor statute, section 684 of the Civil Practice Act, it is this court’s opinion that the mere substitution in the CPLR of the words £ £ receive ” or “ receiving ’ ’ in place of the words 1 ‘ wages * * * due and owing ’ ’ and the substitution in 1970 of the sum of $85 in place and stead of $30, without more, may not be construed as a legislative intent to alter the long-established policy with respect to income executions. This court holds that the word ‘ ‘ receiving ’ ’ is meant to encompass other types of income, in addition to ordinary wages, as being amenable to execution. Any contrary ruling would result in many devious and fraudulent devices on the part of a judgment debtor to reduce his take-home pay.
Motion denied.